# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 24-60650

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent,*

– v. –

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

---

ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF THE
NATIONAL LABOR RELATIONS BOARD

## BRIEF FOR INTERVENOR WORKERS UNITED

Ian Hayes
Michael Dolce
HAYES DOLCE LLP
135 Delaware Ave, Suite 502
Buffalo, New York 14202
Tel: (716) 608-3427
Tel: (716) 912-3480
ihayes@hayesdolce.com
mdolce@hayesdolce.com

*Attorneys for Intervenor,
Workers United*

# INTERVENOR'S CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner/Cross-Respondent:**

- Starbucks Corporation

**Respondent/Cross-Petitioner:**

- National Labor Relations Board

**Intervenor:**

- Workers United, affiliated with the Service Employees International Union

**Counsel for Petitioner/Cross-Respondent:**

Lisa S. Blatt
Amy Mason Saharia
Claire R. Cahill
Sephora Grey
Danielle Sochaczevski
Kees Thompson
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024
(202) 434-5000
lblatt@wc.com
asaharia@wc.com
ccahill@wc.com
sgrey@wc.com
dsochaczevski@wc.com
keesthompson@wc.com

Jeffrey S. Hiller
Littler Mendelson, P.C.
41 S. High St., Ste. 3250
Columbus, OH 43215
(614) 463-4230
jhiller@littler.com

Jonathan O. Levine
Littler Mendelson, P.C.
1111 E. Kilbourn Ave., Ste. 1000
Milwaukee, WI 53202
(414) 291-5537
jlevine@littler.com

**Counsel for Respondent/Cross-Petitioner:**

Ruth E. Burdick
Heather Beard
Amy Ginn
Eric Weitz
National Labor Relations Board
1015 Half Street, SE Washington, DC 20570
(202) 273-2960
appellatecourt@nlrb.gov
heather.beard@nlrb.gov
amy.ginn@nlrb.gov
eric.weitz@nlrb.gov

M. Kathleen McKinney
National Labor Relations Board
600 S. Maestri Place, 7th Floor
New Orleans, LA 70130
(504) 589-6361

**Counsel for Intervenor:**

Ian Hayes
Michael Dolce
Hayes Dolce LLP

135 Delaware Ave., Ste. 502
Buffalo, NY 14202
(716) 534-8388
ihayes@hayesdolce.com
mdolce@hayesdolce.com

Manuel Alfonso Quinto-Pozos
Deats Durst & Owen, P.L.L.C.
8140 N. Mopac Expy., Ste. 250
Austin, TX 78759
(512) 474-7896
mqp@ddollaw.com

/s/ Ian Hayes
Attorney of Record for Workers United

## STATEMENT OF INTERVENOR'S IDENTITY AND INTEREST

Workers United ("Union") is a labor organization that represents more than 86,000 workers in the apparel, textile, industrial laundry, food service, manufacturing, warehouse distribution, and non-profit industries in the United States and Canada, including over 12,000 Starbucks workers. Workers United is affiliated with Service Employees International Union (SEIU). No public company owns an interest in Workers United or SEIU.

Workers United was the successful charging party in the unfair labor practice cases here, NLRB Case Nos. 03-CA-285671, 03-CA-290555, 03-CA-291157, 03-CA-291196, 03-CA-291197, 03-CA-291199, 03-CA-291202, 03-CA-291377, 03-CA-291378, 03-CA-291379, 03-CA-291381, 03-CA-291386, 03-CA-291395, 03-CA-291399, 03-CA-291408, 03-CA-291412, 03-CA-291416, 03-CA-291418, 03-CA-291423, 03-CA-291431, 03-CA-291434, 03-CA-291725, 03-CA-292284, 03-CA-293362, 03-CA-293469, 03-CA-293489, 03-CA-293528, 03-CA-294336, 03-CA-293546, 03-CA-294341, 03-CA-294303, 03-CA-296200, and 03-RC-282127, that resulted in the Order issued against Starbucks Corporation on December 16, 2024 and which is the subject of these proceedings for review and cross-application for enforcement. On January 29, 2025, the Court granted Workers United's Motion to Intervene in this matter.

## STATEMENT REGARDING ORAL ARGUMENT

Workers United submits that while this case involves the application of established legal principles supported by the record, if the Court determines that oral argument would be appropriate, Workers United respectfully requests the opportunity to participate.

# TABLE OF CONTENTS

**Page**

INTERVENOR'S CERTIFICATE OF INTERESTED PERSONS..........................i

STATEMENT OF INTERVENOR'S IDENTITY AND INTEREST.....................iv

STATEMENT REGARDING ORAL ARGUMENT ...............................................v

TABLE OF AUTHORITIES ...................................................................... viii

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................3

I.    FACTUAL HISTORY ............................................................................4

II.   PROCEDURAL HISTORY ....................................................................7

SUMMARY OF ARGUMENT ..........................................................................8

STANDARD OF REVIEW ................................................................................9

ARGUMENT ....................................................................................................10

    I.    THE RECORD SHOWS STARBUCKS ENGAGED IN
        UNPRECEDENTED CONDUCT, UNDERMINING ITS
        BROAD CRITICISMS OF THE BOARD'S ORDER ......................10

    II.   STARBUCKS'S DEFENSES REGARDING MOTIVE ARE
        NOT SUPPORTED BY EXTANT LAW OR THE RECORD ..........13

    III.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
        CONCLUSIONS REGARDING THE SEVEN
        EMPLOYEES STARBUCKS UNLAWFULLY
        TERMINATED ...................................................................................16

        A.    Cassie Fleischer............................................................16

        B.    Kellen Higgins .............................................................17

        C.    Daniel Rojas, Jr. ...........................................................17

        D.    Minwoo Park..................................................................17

        E.    Brian Nuzzo ...................................................................18

        F.    Nathan Tarnowski ..........................................................19

## TABLE OF CONTENTS (cont'd)

Page

    G.     Angel Krempa ........................................................... 19

IV.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
CONCLUSIONS THAT STARBUCKS TAINTED THE
CAMP ROAD ELECTION, JUSTIFYING A *GISSEL*
BARGAINING ORDER .................................................... 20

V.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
CONCLUSION THAT THE CLOSURE OF THE
GALLERIA KIOSK VIOLATED THE ACT ................................... 23

VI.  THE BOARD'S ORDERED REMEDIES ARE JUSTIFIED ............ 25

CONCLUSION ..................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Adams & Assocs., Inc. v. NLRB,*
   871 F.3d 358 (5th Cir. 2017) ................................................................. 23

*Ahearn v. Jackson Hospital, Inc.,*
   351 F.3d 226 (6th Cir. 2003) ................................................................. 22

*Asarco, Inc. v. NLRB,*
   86 F.3d 1401 (5th Cir. 1996) ................................................................. 15

*Cal. Gas Transp. v. NLRB,*
   507 F.3d 847 (5th Cir. 2007) ................................................................. 20

*Denton Cnty. Elec. Coop., Inc. v. NLRB,*
   962 F.3d 161 (5th Cir. 2020) ................................................................. 26

*Elec. Data Sys. Corp. v. NLRB,*
   985 F.2d 801 (5th Cir. 1993) ................................................................. 14

*Evergreen America Corp.,*
   348 NLRB 178 (2006) ........................................................................... 23

*ExxonMobil Rsch. & Eng'g Co., Inc. v. NLRB,*
   132 F.4th 337 (5th Cir. 2025) .................................................................. 9

*Gerig's Dump Trucking, Inc.,*
   320 NLRB 1017 (1996), *enfd.* 137 F.3d 936 (7th Cir. 1998) ............... 21

*Hudson Inst. of Process Rsch. Inc. v. NLRB,*
   117 F.4th 692 (5th Cir. 2024) .................................................................. 9

*Independent Stave Co.,*
   287 NLRB 740 (1987) ........................................................................... 29

*In-N-Out Burger, Inc. v. NLRB,*
   894 F.3d 707 (5th Cir. 2018) ................................................................... 9

*Intertape Polymer Corp.,*
   372 NLRB No. 133 (2023), *enforced mem.*, 2024 WL 2764160
   (6th Cir. 2024) ....................................................................................... 14

# TABLE OF AUTHORITIES (cont'd)

**Page**

*J.P. Stevens & Co. v. NLRB*,
   417 F.2d 533 (5th Cir. 1969) ...................................................................26

*Laro Maintenance Corp. v. NLRB*,
   56 F.3d 244 (D.C. Cir. 1995) ..................................................................14

*Loray Corp.*,
   184 NLRB 557 (1970) .............................................................................26

*Metropolitan Transportation Services*,
   351 NLRB 657 (2007) ....................................................................... 14, 15

*Mid South Bottling Co v. NLRB*,
   876 F.2d 458 (5th Cir. 1989) ...................................................................25

*New Orleans Cold Storage & Warehouse Co. v. NLRB*,
   201 F.3d 592 (5th Cir. 2000) ...................................................................14

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969) ....................................................................... 20, 22, 23

*NLRB v. Jamaica Towing, Inc.*,
   632 F.2d 208 (2d Cir. 1980) ............................................................. 20, 22

*NLRB v. Katz*,
   369 U.S. 736 (1962) ................................................................................22

*NLRB v. P. Lorillard Co.*,
   314 U.S. 512 (1942) ................................................................................22

*NLRB v. Southern Plasma Corp.*,
   626 F.2d 1287 (5th Cir. 1980) .................................................................24

*NLRB v. United Mineral Corp.*,
   391 F.2d 829 (2d Cir. 1968) ....................................................................10

*NLRB v. WKRG-TV*,
   470 F.2d 1302 (5th Cir. 1973) .................................................................22

*Pro-Spec Painting, Inc.*,
   399 NLRB 946 (2003) .............................................................................14

*Roure Bertrand Dupont, Inc.*,
   271 NLRB 443 (1984) .............................................................................15

## TABLE OF AUTHORITIES (cont'd)

Page

*Sara Lee Bakery Grp., Inc. v. NLRB*,
514 F.3d 422 (5th Cir. 2008) ...................................................................9

*Serv-U-Stores*,
225 NLRB 37 (1976) ...............................................................................21

*Shattuck Denn Mining Corp. v. NLRB*,
362 F.2d 466 (9th Cir. 1966) ...................................................................15

*Siren Retail Corp. d/b/a Starbucks Reserve Roastery*,
373 NLRB No. 140 (Nov. 27, 2024)........................................................26

*Siren Retail Corp. d/b/a Starbucks*,
372 NLRB No. 10 (Nov. 30, 2022)..........................................................28

*Starbucks Corp*,
373 NLRB No. 115 (Sept. 30, 2024) ........................................................27

*Starbucks Corp. v. NLRB*,
2024 WL 1319142 (D.C. Cir. Mar. 28, 2024)..........................................28

*Starbucks Corp.*,
2023 WL 5953804 (June 28, 2023) ..........................................................29

*Starbucks Corp.*,
2024 WL 1832224 (April 25, 2024) ..........................................................28

*Starbucks Corp.*,
2024 WL 3422012 (July 12, 2024) ...........................................................28

*Starbucks Corp.*,
2024 WL 687839 (Feb. 14, 2024)..............................................................28

*Starbucks Corp.*,
372 NLRB No. 122 (Aug. 9, 2023) ...........................................................28

*Starbucks Corp.*,
372 NLRB No. 93 (June 20, 2023) ...........................................................28

*Starbucks Corp.*,
373 NLRB 53 (May 7, 2024).....................................................................28

*Starbucks Corp.*,
373 NLRB No. 101 (Sept. 6, 2024) ...........................................................27

# TABLE OF AUTHORITIES (cont'd)

Page

*Starbucks Corp.*,
373 NLRB No. 105 (Sept. 19, 2024) ....................................................27

*Starbucks Corp.*,
373 NLRB No. 111 (Sept. 25, 2024) ....................................................27

*Starbucks Corp.*,
373 NLRB No. 123 (October 2, 2024) ..................................................27

*Starbucks Corp.*,
373 NLRB No. 21 (Feb. 14, 2024) ......................................................28

*Starbucks Corp.*,
373 NLRB No. 33 (Mar. 6, 2024) ........................................................28

*Starbucks Corp.*,
373 NLRB No. 44 (April 25, 2024) ......................................................28

*Starbucks Corp.*,
373 NLRB No. 45 (April 17, 2024) ......................................................28

*Starbucks Corp.*,
373 NLRB No. 48 (May 2, 2024) ........................................................28

*Starbucks Corp.*,
373 NLRB No. 53 (May 7, 2024) ........................................................28

*Starbucks Corp.*,
373 NLRB No. 75 (July 24, 2024) ......................................................28

*Starbucks Corp.*,
373 NLRB No. 83 (Aug. 14, 2024) ......................................................27

*Starbucks Corp.*,
373 NLRB No. 90 (August 28, 2024) ..................................................27

*Starbucks Corp.*,
374 NLRB No. 14 (Dec. 16, 2024) ......................................................26

*Starbucks Corp.*,
374 NLRB No. 8 (Dec. 16, 2024) ........................................................26

*Starbucks Corp.*,
374 NLRB No. 9 (Dec. 16, 2024) ........................................................26

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Page**

*Supershuttle of Orange Cnty, Inc.*,
   339 NLRB 1 (2003) ........................................................................19

*Textile Workers Union of Am. v. Darlington Mfg. Co.*,
   380 U.S. 263 (1965)........................................................................24

*Three Sisters Sportswear Co.*,
   312 NLRB 853 (1993), *enfd. Mem*, 55 F.3d 684 (D.C. Cir. 1995).....................25

*United States Service Industries*,
   319 NLRB 231 (1995) .....................................................................26

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951).........................................................................9

*Wright Line*,
   251 NLRB 1083 (1980), *enforced on other grounds*, 662 F.2d 899
   (1st Cir. 1981) ................................................................... *passim*

**Statutes & Other Authorities:**

29 U.S.C. § 160(a) .............................................................................1

29 U.S.C. § 160(e) .............................................................................1

29 U.S.C. § 160(f).............................................................................1

## STATEMENT OF JURISDICTION

Workers United agrees with the National Labor Relation Board's ("NLRB" or "Board") Statement of Jurisdiction: This case is before the Court on the petition of Starbucks Corporation to review, and the cross-application of the National Labor Relations Board to enforce, the December 16, 2024 Board Order against Starbucks reported at 374 NLRB No. 10.  The Board had jurisdiction over the unfair labor practice proceeding below under Section 10(a) of the National Labor Relations Act ("the Act"), as amended, 29 U.S.C. § 160(a), which empowers the Board to prevent unfair labor practices affecting commerce.  The Board's Order is final.  The Court has jurisdiction under Section 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f). Venue is proper because Starbucks transacts business in this Circuit. Starbucks's petition and the Board's cross-application were timely because the Act imposes no time limits for such filings.

## STATEMENT OF THE ISSUES

Workers United agrees with the NLRB's Statement of the Issues:

I.  Whether the Board is entitled to summary enforcement of the portions of its Order remedying uncontested or inadequately challenged unfair labor practices.

II. Whether substantial evidence supports the Board's findings that Starbucks committed numerous serious and extensive violations of the Act under the following statutory provisions:

    a.      Coercive actions prohibited by Section 8(a)(1);

    b.      Discrimination prohibited by Sections 8(a)(3), (4), and (1);

    c.      Bargaining violations prohibited by Section 8(a)(5), and (1).

III. Whether the Board reasonably tailored its Order to remedy Starbucks's extensive unlawful conduct.

## STATEMENT OF THE CASE

This case concerns audacious and systematic lawbreaking by Starbucks in violent reaction to its employees asserting their basic rights under federal law. The Board meticulously compiled evidence of Starbucks's mass-scale campaign, presented it in a sprawling trial before a Board ALJ, and reiterated that same presentation before the Board members on appeal. The Board's findings, which are the subject of this appeal, likewise presented a picture of unprecedented and bizarre behavior by Starbucks and its representatives over the course of months in extreme detail. The evidence of widespread, persistent, and deliberate violations of the NLRA is overwhelming.

In the face of such an irrefutable picture of open lawlessness, Starbucks attempts to fundamentally reframe the story through its own version of nitpicking and handwaving. Its attempt fails. Rather than addressing individual allegations of its violations of the Act, Starbucks chooses to paint with a broad brush on nearly all points, casually claiming it cannot address its hundreds of violations of the law before this Court, and presumably expecting the Court to do so on its own. It takes the brazen strategy of claiming *all* its actions in the Buffalo area in 2021 and 2022 were simply routine operations for the company, with no connection to its employees' union campaign, which was immediately the subject of international attention. Starbucks asks this Court to believe it was mere coincidence that its

3

actions occurred at the same time as the organizing effort, and that the Board exploited that coincidence by prosecuting it after the fact. It deserves credit for boldness, but not for transparency.

The truth is that Starbucks launched an astonishing attack on its employees' legal rights the moment the union campaign became public. Its tactics were unprecedented then, and have not even been replicated since, despite Starbucks continuing to engage in massive lawbreaking in the years since. Starbucks employees' efforts to have a legal say in their working lives, and Starbucks's attendant campaign to bully its employees into permanent submission, have come to define the story of labor organizing in the twenty-first century. That story started with the events that are the subject of the underlying case. As such, declaring the truth about them mattered to Starbucks employees then, and it matters today.

With respect, this Court cannot absolve such massive violation of the law, especially when Starbucks makes such little effort to refute it. The Board's Order should be enforced in full.

## I.    FACTUAL HISTORY

This discussion is limited relative to the record, and attempts not to repeat most of the comprehensive presentation the Board makes in its brief, with which Workers United agrees. Br.3-15.

Starting in August 2021, Starbucks flew numerous executives and managers to the Buffalo area, almost immediately following employees' announcement that they were organizing with Workers United. RE.5, RE.34; ROA.54-55.[1] In the same period, Starbucks employees filed petitions for union elections through the NLRB at three Buffalo stores. RE.34, ROA.2316, 2318.

In the days following the public announcement of the union campaign, Starbucks representatives began engaging in observation of employees' union activity, physically occupying Starbucks stores they had not before, and holding meetings among themselves and with workers about the unionization effort. RE.35, 40n.81, RE.95; ROA.1155, 1216, 1848-50, 1926. Starbucks representatives soon began claiming they had traveled across the country simply in response to previously-unknown but dire problems with Buffalo stores. RE.36; ROA.1850-51. At least one Buffalo Store Manager, David Almond, stated local managers had attempted to address those issues long before, but had been told by Starbucks higher ups that the resources to address those problems did not exist. RE.36; ROA.1851.

Both within the mandatory meetings and out, Starbucks endlessly asked employees how it could improve working conditions. RE.2, 35, 38, 69, 73, 78, 87-88, 90, 95-97; ROA.3975-4037, 4481, 4625, 4534-35, 5178-5250, 5297-5351. In the mandatory meetings, for which Starbucks used the euphemism "listening

---

[1] "RE" refers to record excerpts on appeal and "ROA" refers to the record on appeal.

sessions," Starbucks managers asked employees for subjects of complaints, so they could address them. RE.38-39; ROA.4215-4305, 4314-4405, 4476-4573. Starbucks immediately began acting upon the information it compiled in the meetings, by hiring far more employees in the area and making drastic and abrupt improvements to facilities, among other changes. RE.37, 41, 98; ROA.99, 286-87, 556-66, 703-06, 720, 725, 742, 878-88, 1104, 1179, 1417-18, 1540-41, 1557, 1637-38, 1867-68, 1892-93, 3011-36.

Manager Pusatier admitted the meetings were "a little bit different than others" the company had held, because of workers' ongoing protected activity under the NLRA. RE.38, ROA.4481. Managers in the meetings unambiguously directed employees to vote against unionization, making various claims about unionizing preventing managers participating in working conditions, and other threats of worsened conditions if workers voted for the union. RE.39-40, 101-02; ROA.561, 713, 1096, 1224, 1228, 2110, 2431, 4215-4305.

Starbucks directed its managers to monitor and act on union activities within their stores. RE.63, ROA.1855-56. Out-of-town managers, for which Starbucks used the previously unheard-of term "support managers," came to every Buffalo-area store and spoke to employees at every opportunity. RE.1, 36, ROA.93, 417, 544, 859, 1220, 1531, 1855-56, 2651, 2710, 2729-31, 2841-48, 3095, 3368, 3402-03, 3461-62. Managers also began wearing headsets at all times within the store,

allowing them to overhear conversations among employees.  RE.52, ROA.726-30, 789-90, 2154.

As time went on, Starbucks began shifting from promising and granting improvements to disciplining employees under policies that previously allowed managers discretion – what the company termed "level-setting."  RE.5, ROA.476, 503, 741, 868, 871-73, 994, 1244, 1702-04.  Starbucks did this only in Buffalo stores, and not within other parts of Area 156 (where there was no union campaign).  RE.34-35, 106, ROA.2826-34, 2858-59.  Starbucks also began imposing greater burdens on employees' ability to disable mobile orders and scheduling.  RE.57, 111; ROA.1175-76, 1568, 1696.  As discussed *infra*, Starbucks terminated seven employees and disciplined many others, and soon resorted to even more desperate actions, such as closing locations temporarily or permanently.

## II.    PROCEDURAL HISTORY

In response to the above, Workers United filed numerous unfair labor practice charges with the NLRB, resulting in in-depth investigation of their allegations, and the Board's General Counsel eventually issued multiple consolidated complaints against Starbucks.  Following an exhaustive administrative law judge (ALJ) hearing, the ALJ made a sprawling decision and recommended order, finding Starbucks had violated the Act dozens of times over.  RE.122-24.

On appeal of the ALJ's decision, the Board agreed with most, but not all of the ALJ's conclusions, treating each allegation individually, and holding that Starbucks violated sections 8(a)(1, (3), (4), and (5) of the Act numerous times. RE.1-10. The Board's Order required Starbucks to: cease and desist from committing unfair labor practices or otherwise interfering with employees' exercise of their rights under the Act; bargain with the union regarding changes to working conditions at unionized stores and with the union as the representative of workers at the Camp Road location; make employees whole for their lost earnings; reinstate employees who Starbucks had terminated or constructively discharged in the period in question; rescind unlawful discipline issued to employees; and reopen the Galleria kiosk store Starbucks had closed as part of its campaign.

## SUMMARY OF ARGUMENT

Workers United joins with and supports the Board's position on every point in this matter. The union remarks here on Starbucks's violations of the Act that did the most far-reaching damage, as well as the most glaring deficiencies in Starbucks's position. Contrary to Starbucks's claims, the record leaves no doubt that executives' and managers' conduct in Buffalo was out of sync with Starbucks practices, supporting the Board's findings of unlawful conduct. For similar reasons, Starbucks's claims regarding the Board's burden of proving motive fail. Given these points, substantial evidence supports the Board's findings that the seven employees

were terminated in violation of the Act, that a remedial bargaining order is appropriate at the Camp Road location, the order to reopen the Galleria kiosk, and the other remedies the Board orders.

## STANDARD OF REVIEW

This Court's review "'of NLRB decisions and orders is limited and deferential.'" *ExxonMobil Rsch. & Eng'g Co., Inc. v. NLRB*, 132 F.4th 337, 344 (5th Cir. 2025 (quoting *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707, 714 (5th Cir. 2018)).

The Court "will affirm the NLRB's legal conclusions if they have a reasonable basis in the law and are not inconsistent with the NLRA." *Hudson Inst. of Process Rsch. Inc. v. NLRB*, 117 F.4th 692, 700 (5th Cir. 2024) (internal quote omitted).

The Board's factual findings are reviewed under a "substantial evidence" standard, whereby the Court accepts the Board's findings if supported by "'more than a scintilla' of 'relevant evidence as a reasonable mind would accept to support a conclusion.'" *Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008) (internal citation omitted). Even where this Court could "'justifiably make a different choice had the matter been before it de novo,' it cannot 'displace the Board's choice between two fairly conflicting views' of the evidence." *ExxonMobil*, 132 F.4th at 344 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## ARGUMENT

### I.    THE RECORD SHOWS STARBUCKS ENGAGED IN UNPRECEDENTED CONDUCT, UNDERMINING ITS BROAD CRITICISMS OF THE BOARD'S ORDER

Starbucks attempts to duck its burden of asserting and proving specific deficiencies in the Boad's findings and conclusions, instead making generalized assertions regarding the nature of its conduct in Buffalo in 2021 and 2022. Starbucks characterizes all the conduct at issue as in line with established company practices in Buffalo and nationally, apparently taking the position all the conduct the Board found violated the Act simply coincided with its employees' high-profile union campaign. The record says otherwise, and invites the conclusion that "[t]he circumstances [ ] were as suspicious as could be imagined", especially regarding the timing of Starbucks's conduct. *NLRB v. United Mineral Corp.*, 391 F.2d 829, 833-34 (2d Cir. 1968).

Starbucks's recasting of the scene fails, based on the overwhelming substantial evidence in the record. Its behavior was unprecedented in every meaningful sense. This, combined with the conspicuous timing of the conduct at issue, helps support the Board's case that Starbucks violated the Act under applicable law. This principle, which runs throughout the entire matter, reinforces the numerous findings that Starbucks violated Sections 8(a)(1) of the Act many dozens of times,

and supports the conclusions that it violated Section 8(a)(3) under the *Wright Line* analysis.

As described *supra*, the record proves Starbucks's conduct starting in August 2021 was not normal in the Buffalo area or anywhere else in the country.  Whereas Starbucks's refrain became that it was simply responding to newly-discovered issues in Buffalo stores, its own manager stated he had tried to raise those same issues with Starbucks earlier, and before the union effort became public, but it had led to no action.  RE.36, ROA.1850-51.  Starbucks began holding ongoing meetings with employees at every Buffalo store, which one manager admitted were not like other meetings the company had held elsewhere.  RE.38, ROA.4481.  Managers were directed to implement other changes from Starbucks practice, including changing their schedules for the explicit purpose of observing employees engaging in union activity.  RE 63, ROA.1855-56.

Starbucks's assignment of out-of-town managers en masse, and those managers' ongoing presence in Starbucks locations, was all out of keeping with established practice there and elsewhere.  RE.1, 36, ROA.93, 417, 544, 859, 1220, 1531, 1855-56, 2651, 2710, 2729-31, 2841-48, 3095, 3368, 3402-03, 3461-62. Those managers' behavior was also unprecedented.  For example, their sudden decision to wear headsets at all times within the stores did not exist before this period.  RE.52, ROA.726-30, 789-90, 2154.

Similarly, the improvements to stores and working conditions generally were all implemented in an abrupt and expedited manner, which far outmatched the volume and usual pace of changes under Starbucks practice. RE.37, 41, 98; ROA.99, 286-87, 556-66, 703-06, 720, 725, 742, 878-88, 1104, 1179, 1417-18, 1540-41, 1557, 1637-38, 1867-68, 1892-93, 3011-36.

Starbucks's negative treatment of employees, in the form of level setting and discipline for previously-tolerated conduct, was also unprecedented within the company. RE.5, ROA.476, 503, 741, 868, 871-73, 994, 1244, 1702-04. Indeed, even the concept of level setting, upon which Starbucks relies so heavily in arguing the anodyne nature of its conduct, betrays that the company made fundamental changes in Buffalo; there is no dispute Starbucks changed how policies applied in Buffalo during this period. Starbucks's repeated claims that such level setting took place elsewhere in the country are not supported on the record. Instead, the record shows Starbucks did not even bother to institute such changes elsewhere in Area 156, let alone anywhere else. RE.34-35, 106, ROA.2826-34, 2858-59. The abrupt and radical change to standards was applied *only* in Buffalo.

After meticulously reviewing this record, the Board concluded such conduct represented "unprecedented practices," contrary to Starbucks's claims now. RE.5, 104-06, ROA.415. Furthermore, the Board found the reason Starbucks managers gave for the changes at the time – that they were simply addressing concerns at

Buffalo stores, unrelated to the union efforts – failed on the record. RE.106. Instead, the record showed such problems were "not new." RE.5. Reinforcing this, Starbucks chose not to address similar problems in nearby locations, when those locations were not the site of ongoing organizing. RE.34-35n.39, 106. Therefore, Starbucks's identical claims here that its reasons for changes were innocent and unrelated to the union fail for the same reasons.

With this in mind, Starbucks's key defensive premises fall away. It characterizes its conduct as the inevitable result of routine policies that apply everywhere. This is particularly true of the far-reaching discipline it imposed on its employees in violation of Section 8(a)(3) of the Act, which Starbucks addresses in passing by saying it was because of level setting. The record comprehensively disproves these assertions. There is no evidence Starbucks acted in the way it did in Buffalo before or since, anywhere.

## II.    STARBUCKS'S DEFENSES REGARDING MOTIVE ARE NOT SUPPORTED BY EXTANT LAW OR THE RECORD

Starbucks claims in different ways that the Board did not meet its legal burdens of proving Starbucks's motive with respect to the many violations of the Act. Br.25, 40-46. These points misstate the law. In the context of labor disputes, as with other employment-related legal claims, the requisite showing of what Starbucks calls motive is routinely proven based on the circumstances surrounding employer behavior, not on proverbial smoking guns.

As the Board also points out, the foundational analysis before this Court and elsewhere for proving anti-union motivation on behalf of an employer is *Wright Line*. 251 NLRB 1083 (1980), *enforced on other grounds*, 662 F.2d 899 (1st Cir. 1981); *New Orleans Cold Storage & Warehouse Co. v. NLRB*, 201 F.3d 592, 600-01 (5th Cir. 2000) (citing *Wright Line* in determining motive under Section 8(a)(3)). Under this analysis, the Board and courts routinely rely on circumstantial evidence to infer a motive that violates the Act. *Elec. Data Sys. Corp. v. NLRB*, 985 F.2d 801, 804-05 (5th Cir. 1993). Such circumstantial evidence includes the timing of the conduct at issue, carrying out contemporaneous violations of the Act, giving false explanations for conduct, and behavior that does not match past practices. *Intertape Polymer Corp.*, 372 NLRB No. 133, slip op. 6-7 & n.27 (2023), *enforced mem.*, 2024 WL 2764160 (6th Cir. 2024). As described throughout, all those factors apply to Starbucks in this matter.

Other authority demonstrates why Starbucks's reliance on level setting in particular does not serve its position. The Board "may offer proof that the employer's reasons for the personnel decision were pretextual." *Metropolitan Transportation Services*, 351 NLRB 657 (2007); see also *Pro-Spec Painting, Inc.*, 399 NLRB 946, 949 (2003); *Laro Maintenance Corp. v. NLRB*, 56 F.3d 244, 229 (D.C. Cir. 1995). ("When the employer presents a legitimate basis for its actions which the factfinder concludes is pretextual [ ] the factfinder may not only properly

infer that there is some other motive, but 'that the motive is one that the employer desires to conceal – an unlawful motive[.]'") (quoting *Shattuck Denn Mining Corp. v. NLRB*, 362 F.2d 466, 470 (9th Cir. 1966). Rather than only having to show the employer had a legitimate reason for the action, it must also show "evidence that the same action would have taken place even in the absence of the protected conduct." *Roure Bertrand Dupont, Inc.*, 271 NLRB 443, 443 (1984). However, where, as here, the offered reasons "are pretextual – that is either false or not in fact relied upon – the [employer] fails by definition to show that it would have taken the same action for those reasons, absent the protected conduct, and thus there is no need to perform the second part of the *Wright Line* analysis." *Metropolitan Transportation Services* at 659.

The authority Starbucks cites in making these defenses and claiming the Board took a "short-cut," undermine its arguments. Br.40. In *Asarco, Inc. v. NLRB*, 86 F.3d 1401, 1408 (5th Cir. 1996), this Court held the Board's inference of anti-union animus must be reasonable and supported by substantial evidence. Assuming that is the case, the Board's inference is proper. *Id.* Such was the situation here. The Board analyzed and recited the relevant evidence supporting the assertion that Starbucks acted out of anti-union animus many times over, and does so again here. Those factors make the inference reasonable. *Id.* As the Board demonstrated in its Order, substantial evidence supports each finding that Starbucks violated the Act.

## III.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSIONS REGARDING THE SEVEN EMPLOYEES STARBUCKS UNLAWFULLY TERMINATED

While Workers United agrees with the Board's position and arguments regarding all the violations of the Act it found, the high stakes that apply in cases where an employer terminates employees in violation of the Act demand special attention.  The Board has shown that substantial evidence supports the conclusion that Starbucks terminated six employees in violation of the Act, and caused the constructive discharge of a seventh employee.

Regarding all seven violations, Starbucks provides only cursory claims that each of the discriminatees allegedly did things that might have been grounds for discipline.  It does not, as *Wright Line* requires, prove that it would in fact have terminated each of the employees for this conduct.  251 NLRB 1083, 1086-87 (1980).  Based on this, Starbucks's general failure to engage with the Board's findings regarding each termination, and the explanation *infra*, the Board proved each allegation was supported by substantial evidence, and these conclusions in its Order should be enforced.

### A.   Cassie Fleischer

Fleischer was terminated, even by Starbucks's own account (Br.53), under a newly-adopted policy requiring expended minimum scheduling availability. RE.117.  The implementation of this policy itself was a violation of the Act,

16

according to the substantial evidence described by the Board. RE.117. Furthermore, Starbucks honored the older, more relaxed availability requirements for other employees, regardless of tenure, but not Fleischer. RE.117, ROA.2049. As such, Starbucks did not and cannot prove it would have terminated Fleischer (but not the others) under the violative policy.

### B.    Kellen Higgins

For the same substantive reasons, the Board has shown that Starbucks constructively discharged Higgins. Like Fleischer, Higgins was affected by the illicit availability policy, and was forced to resign because of it. RE.120.

### C.    Daniel Rojas, Jr.

Rojas was terminated for a minor instance of tardiness, which Starbucks claims justifies his termination. Br.53. Substantive evidence shows Starbucks allowed managers to exercise discretion whether to discipline employees for such minor tardiness, and that other employees were not terminated for it before the public start of the union campaign. RE.32. Starbucks relies on categorically different examples to justify Rojas's termination – involving one employee being egregiously late three times in two weeks and falsely recording time, and others who had entire days of unexcused absences. Br.53; ROA.8360, 8413-19.

### D.    Minwoo Park

While Starbucks relies on Park putting his finger in a drink (Br.50-51), the record shows these grounds to be fundamentally unreasonable and belied by the

context.  Park put his finger in when coworkers asked him about the difference in making drinks, and the circumstances suggested it was a practice drink.  RE.118; ROA.1653-54, 1670-72, 1674-75.  When he learned it was not a practice drink, he replaced it, which was a routine occurrence.  RE.118; ROA.1653-54.  The Board found this to be reasonable.  RE.118.

Beyond this, the record contains other food-related violations, for which Starbucks did not terminate employees, but rather issued documented coachings.  ROA.8197, 8446.  Again, Starbucks does not and cannot meet its burden of explaining this disparity, or proving it would have terminated Park outside of the context of the union campaign.  Substantial evidence supports the conclusion Park was terminated in violation of the Act.

### E.    Brian Nuzzo

Similarly, Starbucks attempts to cherry pick discrete facts about Nuzzo – that he was in the store by himself, allegedly in violation of a policy, and that he removed his mask (Br.49-50) – but cannot explain why his case differed from others on the record.  The record showed shift supervisors on opening shifts routinely entered the store by themselves, and that employees had removed their masks like Nuzzo without facing termination.  RE.79, ROA.1469-73, 1478-81, 2546.  Starbucks therefore fails to meet its defensive burden under *Wright Line* regarding the investigation into Nuzzo.  Given this, Nuzzo's response to Starbucks's tainted

investigation also cannot be grounds for legitimate termination. *Supershuttle of Orange Cnty, Inc.*, 339 NLRB 1, 4 (2003). Therefore, substantial evidence supports the Board's conclusion Nuzzo's termination violated the Act.

## F.     Nathan Tarnowski

Starbucks refers to Tarnowski's alleged failure to report a symptom when completing the company's COVID-19 screening on one occasion. Br.52. As the Board later found, Tarnowski had the reasonable belief that the screening asked only for unusual symptoms, and acted accordingly. ROA.2223, 2240. Furthermore, Starbucks again treated Tarnowski more harshly than other employees who failed to report symptoms, but who were not terminated. RE.119, ROA.2156-57. Since Starbucks cannot meet its defensive burden of showing a legitimate reason for such disparate treatment, it cannot show it would have terminated Tarnowski for this minor violation outside of the union organizing context. Therefore, the Board's conclusion is supported by substantive evidence.

## G.     Angel Krempa

Like Park, who was at the same location, Krempa's termination rested on two minor instances of tardiness, during each of which Krempa had attempted to call the store to give advance notice. RE.75, ROA.1035-36, 1040-43, 1262-63, 1748-49, 2657-62, 4457. Again, Starbucks did not attempt to present evidence that it had terminated employees for such minor attendance issues, particularly under those

circumstances, as the Board concluded.  RE.32.  Its conclusion regarding Krempa's

termination is therefore supported by substantial evidence and should be enforced.

## IV.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSIONS THAT STARBUCKS TAINTED THE CAMP ROAD ELECTION, JUSTIFYING A *GISSEL* BARGAINING ORDER

The anti-union campaign described throughout and supported by the record

shows that the Board correctly issued a remedial bargaining order regarding the

Camp Road Starbucks location.  Well-established law allows for such an order when

serious or widespread violations of the Act have caused a union to lose a

representation election after previously having the support of a majority of workers.

*NLRB v. Gissel Packing*, 395 U.S.575, 614 (1969).  This Court applies a four-part

test when evaluating such an order, and will enforce one when: 1) the union had

majority support through authorization cards; 2) the employer violated the Act in a

way that was "serious and extensive"; 3) facilitating a fair rerun election is "slight";

and 4) employee sentiment would best be protected through an order.  *Cal. Gas

Transp. v. NLRB*, 507 F.3d 847, 854-55 (5th Cir. 2007).  Precedent has applied

functionally the same principles for decades in cases where an employer's unlawful

conduct has made a truly fair rerun election impossible.  *E.g.*, *NLRB v. Jamaica

Towing, Inc.*, 632 F.2d 208, 212 (2d Cir. 1980).

The Board's analysis here evaluated all four factors under *California Gas*,

finding they were all met regarding the Camp Road Starbucks location.  RE.13-14,

120-22.  Contrary to Starbucks's position, the Board found extensive violations of the Act at the Camp Road location, including: granting meaningful benefits to workers (RE.97-98); granting promotions and other improved working conditions (RE.8, 97-98); retaliating against a union leader by demoting her (RE.112); reducing store hours (RE.6-7); and engaging in threats to take away benefits if employees there voted for the union (RE.101-02).  Such violations have traditionally supported remedial bargaining orders.  *Gerig's Dump Trucking, Inc.*, 320 NLRB 1017, 1018 (1996), *enfd.* 137 F.3d 936 (7th Cir. 1998) (unlawful granting of benefits).

Furthermore, as the Board pointed out, these violations took place within the context of the "relentless" anti-union campaign raging at other nearby Starbucks locations, which further contributed to the union's loss of majority support by the day of the election.  *See* RE.121.  Indeed, Board law has routinely looked to violations of the Act occurring in the surrounding area when determining whether a bargaining order is appropriate, since serious violations of the Act inevitably affect workers' support for a union, even if they occur outside the four walls of the facility. *Serv-U-Stores*, 225 NLRB 37, 38 (1976) (issuing remedial bargaining order where employer "clos[ed] its furniture store [ ] because of the union activity of the employees therein and in order to chill unionism at its other stores.").  The scale and depth of Starbucks's violations of the Act in the Buffalo area at the time of the election at Camp Road were staggering, and included the most coercive types of

unlawful conduct. *Ahearn v. Jackson Hospital, Inc.*, 351 F. 3d 226, 239 (6th Cir. 2003) (employees newly organizing with a union are "highly susceptible to management misconduct."); *Jamaica Towing*, 632 F.2d at 213 ("the reassignment, demotion, or discharge of union adherents will carry a message which cannot be lost on employees in the voting group. While there is some slight chance that a single 8(a)(3) violation will not be perceived as employer retribution, repeated violation will rarely if ever be misinterpreted.").

In any event, the Board did not rely only on violations outside the Camp Road location, but also compiled the litany of violations specific to the location, which included hallmark violations. RE.6, 8-9, 56-62, 94-95, 97-104, 106-110, 112-14. These are the sort of hallmark violations of the Act that justify a bargaining order, because their coercive effect on workers is pronounced and lingers. *NLRB v. WKRG-TV*, 470 F.2d 1302, 1319-20 (5th Cir. 1973) (enforcing *Gissel* bargaining order based on interrogation of employees, promising benefits, and interfering with union activity). For decades, the Supreme Court has held such orders are appropriate because employer conduct like Starbucks's here makes a fair rerun election impossible. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610 (1969) (*citing NLRB v. Katz*, 369 U.S. 736, 748, n 16 (1962); *NLRB v. P. Lorillard Co.*, 314 U.S. 512 (1942)). Even in cases where there are not hallmark violations, but an employer has

nonetheless carried out violations of the Act that are "numerous and serious," a bargaining order has been deemed appropriate. *Evergreen America Corp.*, 348 NLRB 178, 180 (2006). Most cases involving such orders involve only a handful of violations of the Act; this case involves hundreds.

The other authority upon which Starbucks relies in opposing the remedial order does not support its position. Br.60-61. In *Adams & Assocs., Inc. v. NLRB*, 871 F.3d 358, 375 (5th Cir. 2017), for example, this Court reiterated the principles described above: that *Gissel* orders are "limited to exceptional cases" in which an employer's conduct makes a fair election impossible. For the reasons above, this case matches that description.

The Board correctly found substantial evidence supported such an order, and its conclusion should be enforced.

## V.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT THE CLOSURE OF THE GALLERIA KIOSK VIOLATED THE ACT

Starbucks's decision to close the Galleria kiosk – a Starbucks location where an outsized portion of the workforce signed the letter announcing the union campaign – is a serious violation of Act, and the Board's conclusion on this point should be enforced. As common sense suggests, closing a location because of employees exercising their right to organize violates the Act, since such conduct does such obvious and extensive damage to employees' willingness or exercise their

rights. *See Textile Workers Union of Am. v. Darlington Mfg. Co.*, 380 U.S. 263, 273 (1965); *NLRB v. Southern Plasma Corp.*, 626 F.2d 1287, 1292–94 (5th Cir. 1980).

Starbucks says little in defense of its decision to close the location, beyond repeating the same justifications it has offered before: the alleged condition of the store, and vague assertions about closing mall locations.   Br.49.   The Board assiduously evaluated these justifications, and concluded they were not a valid defense.  RE.109.  As the Board stated, all these reasons existed before the August 2021 start of employees' union campaign, but the record shows Starbucks made no move to close the location until after the campaign began.   RE.7, 67n.288. Furthermore, the record shows Starbucks had just installed a new stove in the location and was in the process of cleaning and organizing it.  RE.109, ROA.1285-86, 1790.   This further belies the suggestion the closing was part of a broader corporate decision.

Rather, the fact that half of the employees at the Galleria kiosk signed the "Dear Kevin" letter suggested Starbucks's true motivation in closing the location. ROA.1786-87.  Starbucks viewed it as a hotbed for union activity, and chose to make an example of it.  Starbucks's explanations for the closure fall apart under scrutiny, and it cannot meet its burden of showing it would have closed the location under other circumstances.  Substantial evidence therefore supports the Board's conclusion Starbucks closed the location in violation of the Act.

Finally, Starbucks's position that the Galleria kiosk cannot be reopened pursuant to the Board's Order fails. Since the start of the underlying case and to date, Starbucks has failed to present the issue or support its position with substantive evidence. The default remedy in such a case before this Court is returning to the status quo ante. *Mid South Bottling Co v. NLRB*, 876 F.2d 458, 460-61 (5th Cir. 1989). In any event, the kiosk is apparently still an operating Starbucks location, just a licensed one. ROA.2827-28, 2853, 2860-61. Therefore, the Board is correct that the issue cannot be heard here, and that Starbucks's position must be rejected. Br.61-63.

## VI.   THE BOARD'S ORDERED REMEDIES ARE JUSTIFIED

For the reasons stated *supra*, the Board's decision to issue a remedial bargaining order at the Camp Road location and its directive to reopen the Galleria kiosk as it existed before were justified and supported under the law.

The circumstances also support the Board's remedy of a notice reading by a Starbucks executive. First, Starbucks executives made themselves part of the story by coming to Buffalo and carrying out an aggressive campaign against their own employees' legal rights. Such a tactic has a highly coercive effect, and case law says it requires the symmetrical remedy of a notice reading. *Three Sisters Sportswear Co.*, 312 NLRB 853, 853 (1993), enfd. mem 55 F.3d 684 (D.C. Cir. 1995) (ordering the high-ranking official who helped carry out unfair labor practices to read the

notice, in order to "dispel the atmosphere of intimidation he created."); *Loray Corp.*, 184 NLRB 557, 558 (1970) (ordering that the employer's owner and president read the notice, given the extensive and flagrant violations of the Act); *United States Service Industries*, 319 NLRB 231, 232 (1995).   Common sense compels the conclusion that a Starbucks executive must be the one to take the basic step of informing the employees of their rights under the law, since they were the ones who unlawfully coerced them.  *J.P. Stevens & Co. v. NLRB*, 417 F.2d 533, 540 (5th Cir. 1969) (notice reading is an "effective but moderate way to let in a warming wind of information and, more important, reassurance.").

Furthermore, as Starbucks points out, the remedy is appropriate for recidivist violators of the Act.  *Denton Cnty. Elec. Coop., Inc. v. NLRB*, 962 F.3d 161, 174 (5th Cir. 2020).   Starbucks has made itself just that on a historic scale, both in Buffalo and across the United States.  This was true at the time the Board issued its Order on December 16, 2024, and continues to be so.  *Starbucks Corp.*, 374 NLRB No. 9 (Dec. 16, 2024) (Starbucks violated Section 8(a)(1) by, among other things, telling an employee that company-wide benefit increases would be put "on pause" for stores that were engaged in union organizing campaigns); *Starbucks Corp.*, 374 NLRB No. 8 (Dec. 16, 2024); *Starbucks Corp.*, 374 NLRB No. 14 (Dec. 16, 2024); *Siren Retail Corp. d/b/a Starbucks Reserve Roastery*, 373 NLRB No. 140 (Nov. 27, 2024) (Starbucks violated Section 8(a)(1) by, among other acts, threatening employees that

unionization would cause them to lose benefits and would cause Starbucks to prioritize giving new benefits to employees at its nonunionized stores over unionized stores); *Starbucks Corp.*, 373 NLRB No. 123 (October 2, 2024) (Starbucks interim CEO made an implied threat that employee should quit after they raised union-related issues during a company collaboration session); *Starbucks Corp*, 373 NLRB No. 115 (Sept. 30, 2024) (Starbucks threatened employees with store closure if they voted for the union); *Starbucks Corp.,* 373 NLRB No. 111 (Sept. 25, 2024) (Starbucks issued warning to employees for participating in Board processes and for supporting union, sent employees home early and scrutinized them more closely because of their union support); *Starbucks Corp.*, 373 NLRB No. 105 (Sept. 19, 2024) (Starbucks issued unlawful rule against possessing and distributing union materials and discarding union materials pursuant to the rule); *Starbucks Corp.*, 373 NLRB No. 101 (Sept. 6, 2024) (Starbucks violated Section 8(a)(1) by issuing overly broad subpoenas requiring employees to produce information and documents related to their union and protected concerted activities); *Starbucks Corp.,* 373 NLRB No. 90 (August 28, 2024) (Starbucks engaged in coercive interrogation, threats of a loss of pay and benefits, threats of fewer hours and more onerous working conditions); *Starbucks Corp.*, 373 NLRB No. 83 (Aug. 14, 2024); (Starbucks violated Section 8(a)(3) and (1) by terminating an employee for engaging in union activities and violated Section 8(a)(5) and (1) by failing to respond to the Union's request for

information); *Starbucks Corp.,* 373 NLRB No. 75 (July 24, 2024) (Starbucks solicited grievances and made promises to remedy them, made threats of loss of pay and benefits, and created unlawful impression of surveillance); *Starbucks Corp.*, 373 NLRB 53 (May 7, 2024) (Starbucks made unlawful threats, threats of job loss, coercive interrogations); *Starbucks Corp.*, 2024 WL 3422012 (July 12, 2024); *Starbucks Corp.*, 373 NLRB No. 53 (May 7, 2024); *Starbucks Corp.*, 373 NLRB No. 48 (May 2, 2024) (Starbucks failed to provide Union with requested information); *Starbucks Corp.,* 373 NLRB No. 44 (April 25, 2024) (Starbucks made threats of loss of benefits and discriminatorily removed postings from bulletin board); *Starbucks Corp.*, 2024 WL 1832224 (April 25, 2024); *Starbucks Corp.,* 373 NLRB No. 45 (April 17, 2024) (Starbucks made threats of loss of benefits in picking up shifts in other stores, economic reprisals including denial of raises, and engaged in unlawful solicitation of grievances and promises to remedy them); *Starbucks Corp.*, 373 NLRB No. 33 (Mar. 6, 2024); *Starbucks Corp.*, 373 NLRB No. 21 (Feb. 14, 2024); *Starbucks Corp.*, 2024 WL 687839 (Feb. 14, 2024); *Starbucks Corp.*, 372 NLRB No. 122 (Aug. 9, 2023); *Starbucks Corp.*, 372 NLRB No. 93 (June 20, 2023), enf'd *Starbucks Corp. v. NLRB*, 2024 WL 1319142 (D.C. Cir. Mar. 28, 2024); *Siren Retail Corp. d/b/a Starbucks*, 372 NLRB No. 10 (Nov. 30, 2022).  As early as June, 2023, the Board also found that the Employer had a proclivity for violating the Act such that ALJs should not approve consent orders to resolve cases consistent with

the Board's doctrine in *Independent Stave Co.*, 287 NLRB 740 (1987). *Starbucks Corp.*, 2023 WL 5953804, at *1 (June 28, 2023).

The Board's position on appropriate remedies in this case was justified.

## CONCLUSION

For the foregoing reasons, Workers United supports the Board and respectfully requests the Court enter a judgment denying Starbucks's petition for review, granting the Board's cross-application, and enforcing the Board's Order in full.

Buffalo, New York
December 17, 2025

Respectfully Submitted,

/s/ Ian Hayes
Ian Hayes
Hayes Dolce LLP
135 Delaware Ave., Ste. 502
Buffalo, NY 14202
ihayes@hayesdolce.com
*Attorneys for Intervenor Workers United*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2025, I served the original of the foregoing Brief of Intervenor, Workers United, via the Court's appellate CM/ECF filing system. I further certify that this document was served on all parties or their counsel of record through the appellate CM/ECF system.

 /s/ Ian Hayes                      
Ian Hayes

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,219 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.

 /s/ Ian Hayes
Ian Hayes