LAW OFFICES

**WILLIAMS & CONNOLLY** LLP®

LISA S. BLATT
(202) 434-5050
lblatt@wc.com

680 MAINE AVENUE SW

WASHINGTON, DC 20024

(202) 434-5000

WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 19, 2026

Via Electronic Case Filing

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re:     *Starbucks Corp. v. NLRB* (5th Cir. No. 24-60650)

Dear Mr. Cayce:

Pursuant to Federal Rule of Appellate Procedure 28(j), Petitioner Starbucks Corp. cites two recent precedential decisions of this Court.  In *Starbucks Corp. v. NLRB*, No. 24-60500 (5th Cir. Apr. 17, 2026), this Court vacated the Board's order concluding that Starbucks committed an unfair labor practice by obtaining Board-issued subpoenas to employees.  In *Starbucks Corp. v. NLRB*, No. 24-60649 (5th Cir. May 14, 2026), this Court vacated a Board order concluding that Starbucks unlawfully terminated a union organizer.

In this appeal, the Union cited both now-vacated Board decisions as supposed evidence that Starbucks is a "recidivist violator[]" for whom drastic remedies such as a notice reading are warranted.  Union Br. 26 (citing 373 NLRB No. 101; 374 NLRB No. 8).  This Court's vacatur of both decisions underscores why it is improper to infer anything about Starbucks' behavior from unenforced Board decisions.  *See* Starbucks Reply 33 n.10.

This Court's decision in No. 24-60649 further reaffirms that the substantial-evidence standard requires the Board to consider "contradictory evidence or evidence from which conflicting inferences could be drawn."  Slip op. 2 (citation omitted).  That holding is particularly relevant here, because the Board did not consider the level-setting activity in other regions that predated the union activity in Buffalo.  That countervailing evidence demonstrates that level-setting was a typical corporate response to underperformance in a region, not unlawful discrimination. *See* Starbucks Opening Br. 42-43; Starbucks Reply Br. 19-20.

WILLIAMS & CONNOLLY LLP®

May 19, 2026
Page 2

Finally, the same decision demonstrates the cross-cutting errors in the ALJ's approach to comparators in his Section 8(a)(3) analysis here.  In No. 24-60649, the Board found a Section 8(a)(3) violation in part because other employees had not been disciplined for profanity, but this Court held that "the Board's decision did not sufficiently address evidence that no other employee had used such extreme profanity targeted at coworkers." Slip op. 2.  That reasoning demonstrates why it was error for the ALJ in this case to hold discipline unlawful unless Starbucks could identify pre-petition examples of the same discipline for the same kind of conduct in the same store.  *See* Starbucks Opening Br. 44-45, 49-53; Starbucks Reply Br. 21, 25-27.

Respectfully submitted,

/s/ *Lisa S. Blatt*

Lisa S. Blatt

cc: counsel of record (via ECF)

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 17, 2026

Lyle W. Cayce
Clerk

No. 24-60500

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent*,

*versus*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

Petition for Review from an Order of the
National Labor Relations Board
Agency No. 21-CA-304228

Before SOUTHWICK, HIGGINSON, and DOUGLAS, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

The National Labor Relations Board found that Starbucks Corporation violated Section 8(a)(1) of the National Labor Relations Act by successfully obtaining Board-issued subpoenas seeking information protected by Section 7 of the Act. But in reaching that conclusion, the Board applied the wrong legal standard. Rather than evaluating whether Starbucks' conduct would "tend to be coercive" under "the totality of the circumstances," *NLRB v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 459 (5th Cir. 1983), the Board treated *National Telephone Directory Corp.*, 319 NLRB 420 (1995)—a discovery rule governing when subpoenas should

be quashed—as dispositive of liability. Because that standard does not answer the question whether an employer has committed an unfair labor practice, we VACATE the Board's order and REMAND for further proceedings not inconsistent with this opinion.

## I.

This case stems from an earlier NLRB unfair labor practice proceeding concerning Starbucks' La Quinta, California store. In December 2021, employees there began a union organizing campaign. Shift supervisors Andrea Hernandez and Jazmine Cardenas joined the union organizing committee and openly supported unionization. Workers United (the "Union") ultimately won the election for certification as the bargaining representative.

In May 2022, the Union filed charges alleging unlawful conduct by Starbucks during the organizing campaign. The Board thereafter issued a complaint alleging that Starbucks had impermissibly restricted employees' discussion of the Union.

Starbucks then began preparing its defense. Under the Board's longstanding rules, however, employers are generally not entitled to prehearing discovery. *Beta Steel Corp.*, 326 NLRB 1267, 1267 n.3 (1998). Instead, they may request subpoenas from the Regional Director to compel attendance and testimony at hearings and production of documents, records, correspondence, or other evidence. 29 C.F.R. § 102.31(a); NLRB, GUIDE TO BOARD PROCEDURES § 5.3(b) (2023), https://perma.cc/DNB5-3WNY.

No. 24-60500

Starbucks availed itself of that procedure. It obtained Board-issued subpoenas directed to Cardenas and Hernandez.[1] The subpoenas sought a broad range of materials, including communications with the Union, communications with other employees about Union activity, documents provided to the Board, and statements or affidavits relating to the allegations in the complaint. They also contained instructions excluding certain confidential Board materials.

The Union and the Board's General Counsel petitioned to revoke the subpoenas. The administrative law judge granted the petitions, concluding that the subpoenas were overbroad and sought information that could reveal protected activity, while permitting Starbucks to renew narrower requests following testimony. The ALJ ultimately dismissed the underlying unfair labor practice complaint, finding other witnesses more credible than Cardenas and Hernandez, and the Board affirmed. *Starbucks Corp.*, 372 NLRB No. 159, 2023 WL 8270018, at *2 (Nov. 28, 2023).

Meanwhile, the Board commenced a second unfair labor practice proceeding based on the Board's issuance of the subpoenas at Starbucks' request, alleging that the subpoenas interfered with employees' Section 7 rights by requesting "information and communications concerning their protected and concerted activities, and/or union activities." Following a hearing, the ALJ concluded that Starbucks' subpoenas had, in fact, violated Section 8(a)(1) by seeking information protected by Section 7.[2] The ALJ found that the "proper standard to apply" to determine whether the

_____

[1] The Board issues subpoenas at the request of the parties in a ministerial manner, as provided by Section 11(1) of the NLRA, 29 U.S.C. § 161(1), and Section 102.31 of its Rules and Regulations, 29 C.F.R. § 102.31.

[2] The ALJ and the Board dismissed the alleged violations of Section 8(a)(4). That ruling is not at issue in this petition.

3

subpoenas violated Section 8(a)(1) was "that contained in *National Telephone*," 319 NLRB 420.

The Board adopted that decision in relevant part and ordered Starbucks to cease and desist from seeking similar subpoenas and to post a remedial notice. Starbucks petitions for review, and the Board cross-applies for enforcement of its order. Our court granted the Union leave to intervene.

## II.

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 207 (5th Cir. 2014).[3]

## III.

Section 7 of the NLRA affords employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection"—and "the right to refrain from any or all of such activities." 29 U.S.C. § 157. To protect those guarantees, Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. *Id.* § 158(a)(1).

The test for Section 8(a)(1) liability is whether an employer's conduct would "tend to be coercive" when considered "within the totality of circumstances surrounding the occurrence at issue."[4] *Brookwood Furniture*,

---

[3] For ease of exposition, this opinion at times attributes to the Board the ALJ's findings that the Board later adopted.

[4] Despite defending its application of *National Telephone*'s balancing test in this case, the Board concedes this point on appeal, acknowledging that "[e]mployer conduct

No. 24-60500

701 F.2d at 459 (quoting *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 415 (5th Cir. 1981)). We have consistently applied that standard in various types of Section 8(a)(1) cases. *See, e.g.*, *Tex. Indus., Inc. v. NLRB*, 336 F.2d 128, 134 (5th Cir. 1964); *NLRB v. Pneu Elec., Inc.*, 309 F.3d 843, 850 (5th Cir. 2002); *Brown & Root, Inc. v. NLRB*, 333 F.3d 628, 634 (5th Cir. 2003). Context—including the identity of the speaker, the setting, and the surrounding events—determines whether conduct would tend to chill the exercise of Section 7 rights. *Pneu Elec.*, 309 F.3d at 850; *Brookwood Furniture*, 701 F.2d at 459–61.

The Board did not undertake the required totality-of-the-circumstances analysis. Instead, it treated the "proper [Section 8(a)(1) liability] standard" as that "contained in *National Telephone*"—a discovery balancing test.

The *National Telephone* "standard," however, was not designed to assess whether employer-sought subpoenas, issued by the Board, "interfere with, restrain, or coerce" employees' exercise of their Section 7 rights. 29 U.S.C. § 158(a)(1).[5] Rather, it provides a discovery rule for determining whether unions or employees may withhold otherwise relevant information

---

violates Section 8(a)(1) if, considering the totality of the circumstances, it would reasonably tend to coerce employees in the exercise of their statutory rights."

[5] There is no dispute that the Board issued the subpoenas it then held violated Section 8. Little caselaw explores this incongruity, and we do not resolve it here because the Board erred at the threshold by applying the wrong liability standard. We therefore will not address in the first instance why parties who receive subpoenas issued by the Board, with instructions about the Board's use of the materials subpoenaed, and with instructions on how to file a petition to the Board to revoke, nevertheless would, under the totality of the circumstances, reasonably perceive coercion from this legal process and attribute it to their employer, defending against Board prosecution. *See generally Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 744 (1983) ("[W]e hold that it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the NLRA.").

5

based on confidentiality interests. As the ALJ recognized, the *National Telephone* test balances "employees' rights under Section 7 to keep their protected activities confidential" against an "employer's need for the information to present its defense." When the former outweighs the latter, the information may be withheld. *Nat'l Tel.*, 319 NLRB at 421–22. That balancing inquiry does not resolve the distinct question whether the employer's conduct is coercive within the meaning of Section 8(a)(1).

As discussed above, that coercion determination turns on the employer's conduct considered in its full context. To be sure, our precedents most often address employer interrogation of protected activity and other coercive conduct, rather than subpoenas. *See, e.g.*, *Brookwood Furniture*, 701 F.2d at 460; *Pneu Elec.*, 309 F.3d at 850–52. Section 8(a)(1) interrogation cases, for example, commonly involve employers informally eliciting information about protected activity in circumstances that may nonetheless be coercive. As we have held, even "casual, general" questioning about Section 7-protected activity can violate the Act when viewed in context, though context may also show that similar conduct is not coercive. *Brookwood Furniture*, 701 F.2d at 462. A subpoena arguably seeking disclosure of Section 7 activity may operate in a similar basic way—it compels the production of protected information, albeit through a formal legal process rather than informal questioning—and therefore could raise comparable concerns about chilling the exercise of protected rights.

For its part, Starbucks identifies several circumstances it contends the Board should have considered under the totality-of-the-circumstances framework. Those include the subpoena instructions, which explain how recipients may petition to revoke or modify the subpoena, and the subpoena's statement that "[t]he principal use of the information [sought] is to assist the [Board] in processing . . . unfair labor practice proceedings." These considerations are not exhaustive. But their omission underscores the

broader point: by applying the *National Telephone* balancing test, the Board did not evaluate whether the subpoenas it issued, and it could revoke on petition from the subpoenaed parties, were coercive and attributable to employer conduct under the circumstances of this case.

The Board responds that it long ago transformed *National Telephone* into a liability standard in *Wright Electric, Inc.*, 327 NLRB 1194 (1999), *enforced*, 200 F.3d 1162 (8th Cir. 2000). We disagree. There, the Board considered whether to enjoin an employer's discovery requests for employee authorization cards in a state-court malicious prosecution action. *Id.* at 1195. In enjoining those discovery requests, the Board cited *National Telephone* for the proposition that "it is entirely possible that employees would be 'chilled' when asked to sign a union card if they knew the employer could see who signed." *Id.* (quoting *Nat'l Tel.*, 319 NLRB at 421). On that basis, the Board concluded that an employer violates the NLRA by seeking "to obtain the identities of employees who sign authorization cards." *Id.* (quoting *Nat'l Tel.*, 319 NLRB at 421). Nowhere, however, did the Board hold—as it did here—that *National Telephone* supplies the "proper standard" for assessing employer liability under Section 8(a)(1).

The Board's reliance on *United Nurses Ass'ns of California v. NLRB*, 871 F.3d 767 (9th Cir. 2017), is also misplaced. There, the Ninth Circuit upheld the Board's determination that a quashed subpoena violated Section 8(a)(1), and it rejected the employer's contention that the Board had over-relied on *National Telephone* in imposing liability. *Id.* at 785–86. The court explained that the employer's "critique ignore[d] the purpose for which the Board cited *National Telephone*, which was simply for the well-established law that union activity is protected from employers' prying eyes." *Id.* at 786. Here, by contrast, the Board did not cite *National Telephone* merely for that

7

limited proposition; it treated the case as supplying the governing liability standard.

Because the Board considered this case under the incorrect standard, vacatur and remand are the appropriate disposition. "On remand, the Board is free to reconsider the record and make any decision supported by substantial evidence." *Tesla, Inc. v. NLRB*, 120 F.4th 433, 440 (5th Cir. 2024) (en banc) (plurality opinion).

## IV.

For the foregoing reasons, we GRANT Starbucks' petition for review, DENY the Board's cross-application to enforce, VACATE the Board's order, and REMAND for further proceedings not inconsistent with this opinion.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 14, 2026

Lyle W. Cayce
Clerk

————————

No. 24-60649

————————

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent*,

*versus*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

————————————————————————

Petition for Review from an Order of the
National Labor Relations Board
Agency No. 03-CA-296757
Agency No. 03-CA-299016
Agency No. 03-CA-302451

————————————————————————

Before STEWART, GRAVES, and OLDHAM, *Circuit Judges*.

JAMES E. GRAVES, JR., *Circuit Judge*:

Employees at two Starbucks locations in upstate New York began unionizing campaigns in the Spring of 2022. At the first, the Latham store, union organizer and shift supervisor James Schenk was terminated after a series of infractions including using profanity about a coworker in a group chat, failing to complete all tasks during a shift, and opening a letter addressed to Starbucks. At the second, the Stuyvesant store, employees testified that the district manager, Beate Kuhnle-Hambster, substantially

increased her presence during the union campaign. The National Labor Relations Board ("the Board") filed an Amended consolidated complaint alleging various violations of the National Labor Relations Act ("NLRA").

The ALJ concluded that Starbucks' termination of Schenk at the Latham store did not violate the NLRA, but that Kuhnle-Hambster's increased presence at the Stuyvesant store created the unlawful impression of surveillance. The Board agreed regarding the Stuyvesant store but disagreed about Schenk's termination at the Latham store. Instead, it concluded that Starbucks would not have disciplined or terminated Schenk but for his protected union-related activities. Starbucks filed a petition for review, and the Board filed an application for enforcement.

We review the Board's factual findings for substantial evidence. *Renew Home Health v. NLRB*, 95 F.4th 231, 239 (5th Cir. 2024). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." *IBEW, AFL-CIO, CLC, Loc. Unions 605 & 985 v. NLRB*, 973 F.3d 451, 457 (5th Cir. 2020) (citation modified). "It is more than a mere scintilla, and less than a preponderance." *El Paso Elec. Co. v. NLRB*, 681 F.3d 651, 656 (5th Cir. 2012) (citation modified).

But the Board must nevertheless consider "contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951). Accordingly, we may remand for further consideration when the Board fails to do so. *See Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 298 (5th Cir. 2015).

We are not convinced the Board adequately considered contradictory evidence. For one, the Board's decision did not sufficiently address evidence that no other employee had used such extreme profanity targeted at coworkers. It noted evidence that other employees used profanity in the

workplace, but that is a far cry from such extreme and sexist language aimed at a fellow employee and his supervisor. Next, the Board concluded that earlier events that led to disciplinary action against Schenk were not "relevantly similar" to his obscene text messages. While not factually identical, an earlier discipline also involved profanity in the workplace, so the Board should at least consider whether Starbucks would have seen this as an escalating issue.

The Board also did not properly grapple with the fact that no other shift supervisors failed to complete closing tasks while on final warning. Again, this key fact may distinguish his infraction from infractions by other shift supervisors. Finally, the Board gave only cursory attention to evidence that employees generally did not open mail and that Schenk himself stated that he opened that particular letter because he did not believe Starbucks would share its contents with its employees. Even if employees occasionally opened certain items, such as packages, it is possible that a reasonable employer would have responded much differently to Schenk opening official mail from the NLRB.

Given these deficits in the Board's reasoning, its decision should be vacated and the case remanded. *See id.* at 297–98 (vacating and remanding to the Board when it "ignored [relevant] evidence when explaining its reasoning"); *Carpenters & Millwrights, Loc. Union 2471 v. NLRB*, 481 F.3d 804, 813 (D.C. Cir. 2007) (vacating and remanding when the Board "failed to explain why it rejected evidence that is contrary to that finding").

The Board is the primary decisionmaker for adjudications of this kind. *See Harris v. Bessent*, 160 F.4th 1235, 1252 (D.C. Cir. 2025). It is thus best suited to resolve factual disputes and so it must "grapple with countervailing portions of the record." *Dish Network Corp. v. Nat'l Lab. Rels. Bd.*, 953 F.3d 370, 377 (5th Cir. 2020). It did not fully do so here. So, we GRANT the

No. 24-60649

petition for review, VACATE the Board's decision, and REMAND for further proceedings consistent with this opinion.

No. 24-60649

ANDREW S. OLDHAM, *Circuit Judge*, concurring in part:

I wholeheartedly agree with my esteemed colleagues that Starbucks's petition for review must be granted. But I would not remand the matter to the National Labor Relations Board. The Board has starkly deviated from fairminded, law-based adjudication. *See Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 778 & n.96 (5th Cir. 2025) (collecting commentary). And this case is yet another example of the Board's troubling tendencies.

Starbucks fired an employee named James Schenk. Why? Because Schenk called his female coworker with a documented medical condition a "dumb f***ing b**ch who can't even use cleaners" and "useless f***ing [person]." And Schenk called his store manager a "chicken s**t," a "f***ing c**k[]sucker," a "f***ing stupid[]" "lizard brain," and a "[f]***ing [p]***y" who "can suck my f***ing d**k." ROA.763–66, 979, 1049–50. If a company in this country cannot choose to fire someone for this sort of unhinged abuse, then Heaven help us.

The administrative law judge recognized the *obviously* correct fact that Schenk could be fired for his wild-eyed, profanity-laden rants—particularly because he directed some of them at a subordinate and the rest of them at his boss. ROA.985. Then the Board entirely ignored it. ROA.966–70. That is not the stuff of reasonable, fairminded adjudication. So I would not give the Board a second chance to do the right thing.