# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 8, 2026
Thomas B. Plunkett, III
Clerk

---

No. 24-60650

---

STARBUCKS CORPORATION,

Petitioner/Cross-Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross-Petitioner

---

On Petition for Review and Cross-Application for Enforcement of a Decision and Order of the National Labor Relations Board
(NLRB Case Nos. 03-CA-285671,
03-CA-290555, 03-CA-291157,
03-CA-291196, 03-CA-291197,
03-CA-291199, 03-CA-291202,
03-CA-291377, 03-CA-291378,
03-CA-291379, 03-CA-291381,
03-CA-291386, 03-CA-291395,
03-CA-291399, 03-CA-291408,
03-CA-291412, 03-CA-291416,
03-CA-291418, 03-CA-291423,
03-CA-291431, 03-CA-291434,
03-CA-291725, 03-CA-292284,
03-CA-293362, 03-CA-293469,
03-CA-293489, 03-CA-293528,
03-CA-293546, 03-CA-294303,
03-CA-294336, 03-CA-294341,
03-CA-296200, 03-RC-282127)

---

Argued on June 1, 2026

Before: WIENER, HAYNES and GRAVES, Circuit Judges

**JUDGMENT**

THIS CAUSE came to be heard upon a petition filed by Starbucks Corporation to review an Order of the National Labor Relations Board dated December 16, 2024, in Case Nos. 03-CA-285671, 03-CA-290555, 03-CA-291157, 03-CA-291196, 03-CA-291197, 03-CA-291199, 03-CA-291202, 03-CA-291377, 03-CA-291378, 03-CA-291379, 03-CA-291381, 03-CA-291386, 03-CA-291395, 03-CA-291399, 03-CA-291408, 03-CA-291412, 03-CA-291416, 03-CA-291418, 03-CA-291423, 03-CA-291431, 03-CA-291434, 03-CA-291725, 03-CA-292284, 03-CA-293362, 03-CA-293469, 03-CA-293489, 03-CA-293528, 03-CA-293546, 03-CA-294303, 03-CA-294336, 03-CA-294341, 03-CA-296200, 03-RC-282127, reported at 374 NLRB No. 10, and upon a cross-application for enforcement filed by the National Labor Relations Board to enforce said Order. The Court heard argument of the parties and has considered the briefs and agency record filed in this cause. On September 4, 2026, the Court, being fully advised in the premises, handed down its opinion granting in part the petition of Starbucks Corporation and granting in part the Board's cross-petition for enforcement. In conformity therewith, it is hereby

ORDERED AND ADJUDGED by the United States Court of Appeals for the Fifth Circuit that

Respondent/Cross-Petitioner the National Labor Relations Board shall revise its § 8(a)(1) decision in accordance with this Court's decision and specify the specific violations it relied on from its § 8(a)(1) analysis to find anti-union motive for purposes of its §§ 8(a)(3) and 8(a)(4) conclusions; and

Petitioner/Cross-Respondent Starbucks Corporation, its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

a. Soliciting grievances from employees and promising to remedy them in order to discourage employees from selecting union representation.

b. Promising employees increased benefits and improved terms and conditions of employment in order to discourage employees from selecting union representation.

c. Creating the impression that it is engaged in surveillance of its employees' union or other protected concerted activities, including by taking photographs of employees wearing union paraphernalia, stationing support managers at all stores, having high-ranking officials make unprecedented and repeated visits to each store, scheduling managers at stores during all operational hours, and monitoring employees' conversations on headsets.

d. Prohibiting employees from talking about their wages.

e. Restricting employees from posting union literature in employee break areas where the posting of other non-work literature is permitted.

f. Transferring employees to, hiring new employees to work in, and overstaffing stores with upcoming representation elections to dilute prounion support in the elections.

g. Granting and increasing benefits in order to discourage employees from selecting union representation.

h. Promoting employees in order to discourage them from selecting union representation.

i. Remedying or attempting to remedy grievances that were unlawfully solicited, including by authorizing additional hours of labor, offering additional hours of work, arranging for additional training, hiring additional employees, making facilities and equipment upgrades, permitting shift supervisors to shut down mobile ordering, permitting shift supervisors to close store cafés, and increasing the frequency with which schedules are posted, to discourage employees from selecting union representation.

j. Instructing employees not to allow prounion employees to pick up shifts at their stores.

k. Instructing employees to surveil coworkers who engage in union activity.

l. Prohibiting employees from talking about the Union with other employees and customers while permitting employees to talk with other employees and customers about other nonwork subjects.

m. More strictly enforcing its workplace rules and policies because of its employees' support for and activities on behalf of the Union.

n. Discharging, issuing warnings to, retaliating against, or otherwise discriminating against employees because of their support for and activities on behalf of the Union, including by reducing the operational hours of its stores, temporarily and permanently closing its stores, and increasing employees' required minimum availability.

o. Imposing more onerous and rigorous terms and conditions of employment on employees because of their support for and activities on behalf of the Union, including by more strictly enforcing its policies for making drinks, disconnecting the direct telephone line for its stores,
requiring that employees stand in the customer ordering line to order food while working, requiring that employees offer minimum scheduling availability to retain employment, prohibiting employees from using a third-party group chat to switch shifts, and refusing to permit shift supervisors to close the cafés of stores or disable mobile ordering.

p. Retaliating against employees because of their support for and activities on behalf of the Union, including by refusing to allow them to train new employees, sending them home prior to the end of their shifts, randomizing their shifts, reducing their work hours, refusing to con-sider them for a promotion to shift supervisor, replacing their shift supervisor shifts with barista shifts, refusing to permit them to attend paid antiunion meetings, refusing to allow them to work shifts at another store, denying their requests to reduce their availability, denying their leave requests, and banning them from all of the Respondent's stores.

q. Disciplining and discharging employees because of their support for and activities on behalf of the Union.

r. Disciplining and discharging employees because they testified at a Board hearing.

s. Constructively discharging employees by enforcing a new minimum availability policy because of their support for and activities on behalf of the Union.

t. Unilaterally implementing changes affecting Union-represented employees' wages, hours, or other terms and conditions of employment without first notifying the Union and giving it an opportunity to bargain.

u. Discharging or otherwise disciplining Union-represented employees without first notifying the Union and giving it an opportunity to bargain.

v. In any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative actions necessary to effectuate the policies of the Act.

a. Before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of employees in the following bargaining unit (Elmwood Unit):

> All full-time and part-time Baristas and Shift Supervisors employed by the Respondent at its 933 Elmwood Avenue, Buffalo, New York facility, excluding office clerical employees, guards, professional employees and supervisors as defined in the Act.

b. Before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of employees in the following bargaining unit (Transit & French Unit):

> All full-time and regular part-time Baristas and Shift Supervisors employed by the Respondent at its 4770 Transit Road, Depew, New York facility, excluding office clerical employees, guards, professional employees, and supervisors as defined in the Act.

c. On request, bargain with the Union as the exclusive representative of the employees in the following appropriate unit (Camp Road Unit) concerning terms and conditions of employment and, if an understanding is reached, embody the understanding in a signed agreement:

> All full-time and regular part-time Baristas and Shift Supervisors employed by the Respondent at its 5120 Camp Road, Hamburg, New York facility, excluding office clerical employees, guards, professional employees, and supervisors as defined in the Act.

d. On request, rescind all terms and conditions of employment which it unlawfully implemented or unlawfully eliminated on or after August 23, 2021, but nothing in this Judgment is to be construed as requiring the Respondent to rescind any unilateral changes that benefited the unit employees without a request from the Union.

e. On request, restore to Elmwood, Transit & French, and Camp Road Unit employees the terms and conditions of employment that were applicable prior to August 23, 2021, and continue them in effect until the parties either reach an agreement or a good-faith impasse in bargaining.

f. Make whole the unit employees for any losses suffered by reasons of the unlawful unilateral changes in terms and conditions of employment on or after August 23, 2021, plus interest, in the manner set forth in the amended remedy section of this decision, not including compensation for any direct or foreseeable pecuniary harms.

g. Within 14 days from the date of this Judgment, offer Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park, Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski full reinstatement to their former jobs, or if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights and privileges previously enjoyed.

h. Make Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park, Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski whole, in the manner set forth in the amended remedy section of this decision, for any loss of earnings and other benefits suffered as a result of their unlawful discharges, but not including compensation for any direct or foreseeable pecuniary harms.

i. Make Mikaela Jazlyn Brisack, Colin Cochran, Róisín Doherty, Danka Dragic, Cassie Fleischer, Angel Krempa, Caroline Lerczak, Kellen Higgins, Brian Murray, Nicole Norton, Brian Nuzzo, Edwin Park, Gianna Reeve, Daniel Rojas Jr., James Skretta, Nathan Tarnowski, and William Westlake whole, in the manner set forth in the amended remedy section of this decision, for any loss of earnings and other benefits suffered as a result of the discrimination against them, but not including compensation for any direct or foreseeable pecuniary harms.

j. Within 14 days from the date of this Judgment, remove from its files any reference to the unlawful discharges of Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park,

Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski and within three days thereafter notify them in writing that this has been done and that the discharges will not be used against them in any way.

k. Rescind the verbal warnings issued to Danka Dragic, Angel Krempa, Nicole Norton, Gianna Reeve, and James Skretta.

l. Within 14 days from the date of this Judgment, remove from its files any reference to the verbal warnings issued to Danka Dragic, Angel Krempa, Nicole Norton, Gianna Reeve, and James Skretta and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

m. Rescind the written warnings issued to Róisín Doherty, Brian Murray, Nicole Norton, Edwin Park, James Skretta, and Angel Krempa.

n. Within 14 days from the date of this Judgment, remove from all files any reference to the written warnings issued to Róisín Doherty, Brian Murray, Nicole Norton, Edwin Park, James Skretta, and Angel Krempa and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

o. Rescind the documented coachings issued to Angel Krempa, Daniel Rojas Jr., and Edwin Park.

p. Within 14 days from the date of this Judgment, remove from all files any reference to the documented coachings issued to Angel Krempa, Daniel Rojas Jr., and Edwin Park and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

q. Within 14 days from the date of this Judgment, remove from all files any reference to the sending home early of Brian Murray, Angel Krempa, and William Westlake and within three days thereafter notify them in writing that this has been done and that those occurrences will not be used against them in any way.

r. Within 14 days from the date of this Judgment, remove from all files any reference to the reduction in hours of Danka Dragic and Caroline Lerczak and within three days thereafter notify them in writing that has been done and that those reductions will not be used against them in any way.

s. Within 14 days from the date of this Judgment, remove from all files any reference to the refusal to permit Colin Cochran and William Westlake to train new employees and within three days thereafter notify them in writing that this has been done and that those refusals will not be used against them in any way.

t. Compensate Mikaela Jazlyn Brisack, Colin Cochran, Róisín Doherty, Danka Dragic, Cassie Fleischer, Angel Krempa, Caroline Lerczak, Kellen Higgins, Brian Murray, Nicole Norton, Brian Nuzzo, Edwin Park, Gianna Reeve, Daniel Rojas Jr., James Skretta, Nathan Tarnowski, and William Westlake for the adverse tax consequences, if any, of receiving a lump-sum backpay award, and file with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee.

u. Make the Walden Galleria kiosk employees as of September 8, 2021 whole for any loss of earnings and other benefits, suffered as a result of the discrimination against them, in the manner set forth in the amended remedy section of this decision, but not including compensation for any direct or foreseeable pecuniary harms.

v. Compensate any Walden Galleria kiosk employees for the adverse tax consequences, if any, of receiving a lump-sum backpay award, and file with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee.

w. Make employees whole for any loss of earnings and other benefits resulting from the unlawful temporary store closures, in the manner set forth in the amended remedy section of this decision, but not including compensation for any direct or foreseeable pecuniary harms.

x. File with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed by agreement or Board order or such additional time as the Regional Director may allow for good cause shown, a copy of each backpay recipient's corresponding W-2 forms reflecting the backpay award.

y. Preserve and, within 14 days of a request, or such additional time as the Regional Director may allow for good cause shown, provide at a reasonable place designated by the Board or its agents, all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this Judgment.

z. Within 14 days after service by the Region, post at its Buffalo-area facilities copies of the attached notice marked "Appendix A" and the attached Explanation of Rights marked "Appendix B." Copies of the notice and Explanation of Rights, on forms provided by the Regional Director for Region 3, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 1 year in conspicuous

places, including all places where notices to employees are customarily posted. In addition to physical posting of paper documents, the documents shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. The documents shall also be distributed electronically to its supervisors and managers. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed a facility, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at that facility since August 23, 2021.

aa. Hold a meeting or meetings during work hours at the Buffalo-area facilities involved in this case and schedule the meeting or meetings to ensure the widest possible employee attendance. At the meeting or meetings have a high-ranking management official or, in the alternative at the Respondent's option, a Board agent in the presence of such an official, and, if the Union so desires, a union representative, read the attached notice marked "Appendix A" and the attached Explanation of Rights marked "Appendix B" to employees. A copy of the notice and the Explanation of Rights will be distributed by a Board agent during this meeting or meetings to each employee in attendance before the notice and Explanation of Rights are read.

bb. Within 21 days after service by the Region, file with the Regional Director for Region 3 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

ATTEST:

____________________
Clerk

Dated:

**Certified as a true copy and issued as the mandate on Oct 08, 2026**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

APPENDIX A

**NOTICE TO EMPLOYEES**

POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF APPEALS PARTIALLY ENFORCING AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice. The United States Court of Appeals for the Fifth Circuit enforced the National Labor Relations Board's order in part.

FEDERAL LAW GIVES YOU THE RIGHT TO
Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

WE WILL NOT solicit grievances from you and promise to remedy them to discourage you from selecting union representation.

WE WILL NOT promise you increased benefits and improved terms and conditions of employment in order to discourage you from selecting union representation.

WE WILL NOT create the impression that we are engaged in surveillance of your union or other protected concerted activities, including by taking photographs of you wearing union paraphernalia, stationing support managers at all stores, having highranking officials make unprecedented and repeated visits to each store, scheduling managers at stores during all operational hours, and monitoring your conversations on headsets.

WE WILL NOT prohibit you from talking about your wages.

WE WILL NOT restrict you from posting union literature in employee break areas where the posting of other nonwork literature is permitted.

WE WILL NOT transfer you to, hire new employees to work in, or overstaff stores with upcoming representation elections to dilute prounion support in the elections.

WE WILL NOT grant or increase benefits to discourage you from selecting union representation.

WE WILL NOT promote you to discourage you from selecting union representation.

WE WILL NOT remedy or attempt to remedy grievances that were unlawfully solicited, including by authorizing additional hours of labor, offering additional hours of work, arranging for additional training, hiring additional employees, making facilities and equipment upgrades, permitting shift supervisors to shut down mobile ordering, permitting shift supervisors to close store cafés, and

increasing the frequency with which schedules are posted, to discourage you from selecting union representation.

WE WILL NOT instruct you not to allow prounion employees to pick up shifts at your stores.

WE WILL NOT instruct you to surveil employees who engage in union activity.

WE WILL NOT prohibit you from talking about the Union with other employees and customers while permitting you to talk with other employees and customers about other nonwork subjects.

WE WILL NOT more strictly enforce workplace rules and policies because of your support for and activities on behalf of the Union.

WE WILL NOT discharge, issue warnings to, retaliate against, or otherwise discriminate against you because of your support for and activities on behalf of the Union, including by reducing the operational hours of our stores, temporarily and permanently closing our stores, and increasing your required minimum availability.

WE WILL NOT impose more onerous and rigorous terms and conditions of employment on you because of your support for and activities on behalf of the Union, including by more strictly enforcing our policies for making drinks, disconnecting the direct telephone line for our stores, requiring that you stand in the customer ordering line to order food while working, requiring that you offer minimum scheduling availability to retain employment, prohibiting you from using a third-party group chat to switch shifts, and refusing to permit shift supervisors to close the cafés of stores or disable mobile ordering.

WE WILL NOT retaliate against you because of your support for and activities on behalf of the Union, including by refusing to allow you to train new employees, sending you home prior to the end of your shifts, randomizing your shifts, reducing your work hours, refusing to consider you for a promotion to shift supervisor, replacing your shift supervisor shifts with barista shifts, refusing to permit you to attend paid antiunion meetings, refusing to allow you to work shifts at another store, denying your requests to reduce your availability, denying your leave requests, and banning you from all of our stores.

WE WILL NOT discipline and discharge you because of your support for and activities on behalf of the Union.

WE WILL NOT discipline and discharge you because you testify at a Board hearing.

WE WILL NOT constructively discharge you by enforcing a new minimum availability policy because of your support for and activities on behalf of the Union.

WE WILL NOT unilaterally implement changes affecting your wages, hours, or other terms and conditions of employment, if you are a Union-represented employee, without first notifying the Union and giving it an opportunity to bargain.

WE WILL NOT discharge or otherwise discipline you, if you are a Union-represented employee, without first notifying the Union and giving it an opportunity to bargain.

WE WILL NOT in any other manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL, before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of our employees in the following bargaining unit (Elmwood Unit):

> All full-time and part-time Baristas and Shift Supervisors employed by the Respondent at its 933 Elmwood Avenue, Buffalo, New York facility, excluding office clerical employees, guards, professional employees and supervisors as defined in the Act.

WE WILL, before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of our employees in the following bargaining unit (Transit & French Unit):

> All full-time and regular part-time Baristas and Shift Supervisors employed by the Respondent at its 4770 Transit Road, Depew, New York facility, excluding office clerical employees, guards, professional employees, and supervisors as defined in the Act.

WE WILL, on request, bargain with the Union as the exclusive collective-bargaining representative of our employees in the following appropriate unit (Camp Road Unit) concerning terms and conditions of employment and, if an understanding is reached, embody the understanding in a signed agreement:

> All full-time and regular part-time Baristas and Shift Supervisors employed by the Respondent at its 5120 Camp Road, Hamburg, New York facility, excluding office clerical employees, guards, professional employees, and supervisors as defined in the Act.

WE WILL, on request, rescind all terms and conditions of employment which we unlawfully implemented or unlawfully eliminated on or after August 23, 2021, not including any unilateral changes that benefited the unit employees without a request from the Union.

WE WILL, on request, restore to Elmwood, Transit & French, and Camp Road Unit employees the terms and conditions of employment that were applicable prior to August 23, 2021, and continue them in effect until we and the Union either reach an agreement or a good-faith impasse in bargaining.

WE WILL make whole the unit employees for any losses suffered by reasons of the unlawful

unilateral changes in terms and conditions of employment on or after August 23, 2021, plus interest, but not including compensation for any direct or foreseeable pecuniary harms.

WE WILL, within 14 days from the date of the Court's judgment, offer Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park, Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski full reinstatement to their former jobs, or if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights and privileges previously enjoyed.

WE WILL make Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park, Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski whole for any loss of earnings and other benefits, less any net interim earnings, plus interest, suffered as a result of our unlawful discharges of them, but not including compensation for any direct or foreseeable pecuniary harms.

WE WILL make Mikaela Jazlyn Brisack, Colin Cochran, Róisín Doherty, Danka Dragic, Cassie Fleischer, Angel Krempa, Caroline Lerczak, Kellen Higgins, Brian Murray, Nicole Norton, Brian Nuzzo, Edwin Park, Gianna Reeve, Daniel Rojas Jr., James Skretta, Nathan Tarnowski, and William Westlake whole for any loss of earnings and other benefits, plus interest, suffered as a result of our discrimination against them, but not including compensation for any direct or foreseeable pecuniary harms.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the unlawful discharges of Cassie Fleischer, Angel Krempa, Kellen Higgins, Edwin Park, Daniel Rojas Jr., Brian Nuzzo, and Nathan Tarnowski and within three days thereafter notify them in writing that this has been done and that the discharges will not be used against them in any way.

WE WILL rescind the verbal warnings issued to Danka Dragic, Angel Krempa, Nicole Norton, Gianna Reeve, and James Skretta.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the verbal warnings issued to Danka Dragic, Angel Krempa, Nicole Norton, Gianna Reeve, and James Skretta and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

WE WILL rescind the written warnings issued to Róisín Doherty, Brian Murray, Nicole Norton, Edwin Park, James Skretta, and Angel Krempa.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the written warnings issued to Róisín Doherty, Brian Murray, Nicole Norton, Edwin Park, James Skretta, and Angel Krempa and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

WE WILL rescind the documented coachings issued to Angel Krempa, Daniel Rojas Jr., and Edwin Park.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any

reference to the documented coachings issued to Angel Krempa, Daniel Rojas Jr., and Edwin Park and within three days thereafter notify them in writing that this has been done and that the warnings will not be used against them in any way.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the sending home early of Brian Murray, Angel Krempa, and William Westlake and within three days thereafter notify them in writing that this has been done and that those occurrences will not be used against them in any way.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the reduction in hours of Danka Dragic and Caroline Lerczak and within three days thereafter notify them in writing that has been done and that those reductions will not be used against them in any way.

WE WILL, within 14 days from the date of the Court's Judgment, remove from our files any reference to the refusal to permit Colin Cochran and William Westlake to train new employees and within three days thereafter notify them in writing that this has been done and that those refusals will not be used against them in any way.

WE WILL compensate Mikaela Jazlyn Brisack, Colin Cochran, Róisín Doherty, Danka Dragic, Cassie Fleischer, Angel Krempa, Caroline Lerczak, Kellen Higgins, Brian Murray, Nicole Norton, Brian Nuzzo, Edwin Park, Gianna Reeve, Daniel Rojas Jr., James Skretta, Nathan Tarnowski, and William Westlake for the adverse tax consequences, if any, of receiving a lump-sum backpay award, and file with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years.

WE WILL make the Walden Galleria kiosk employees as of September 8, 2021 whole for any loss of earnings and other benefits, less any net interim earnings, plus interest, suffered as a result of the discrimination against them, but not including compensation for any direct or foreseeable pecuniary harms.

WE WILL compensate any Walden Galleria kiosk employees for the adverse tax consequences, if any, of receiving lump-sum backpay awards, and file with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee.

WE WILL make employees whole for any loss of earnings and other benefits, plus interest, resulting from the unlawful temporary store closures, but not including compensation for any direct or foreseeable pecuniary harms.

WE WILL file with the Regional Director for Region 3, within 21 days of the date the amount of backpay is fixed by agreement or Board order or such additional time as the Regional Director may allow for good cause shown, a copy of each backpay recipient's corresponding W-2 forms reflecting the backpay award.

WE WILL preserve and, within 14 days of a request, or such additional time as the Regional Director may allow for good cause shown, provide at a reasonable place designated by the Board or its agents, all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of the Court's Judgment.

WE WILL post this notice and an Explanation of Rights at our Buffalo-area stores for 1 year. In addition, WE WILL distribute these same documents to you and our supervisors and managers electronically, such as by email, posting on an intranet or an internet site, or any other electronic means we customarily use to communicate with you and our supervisors and managers.

WE WILL hold a meeting or meetings during work hours at our Buffalo-area stores and schedule the meeting or meetings to ensure the widest possible employee attendance. At the meeting or meetings one of our high-ranking management officials or, in the alternative at our option, a Board agent in the presence of such an official, and, if the Union so desires, a union representative, will read this notice and the Explanation of Rights to employees. A copy of the notice and the Explanation of Rights will be distributed by a Board agent during this meeting or meetings to each employee in attendance before the documents are read.

STARBUCKS CORPORATION

The Court's decision can be found at https://www.ca5.uscourts.gov/opinions/pub/24/24-60650-CV0.pdf or by using the QR code below.

The Board's decision can be found at https://www.nlrb.gov/case/03-CA-285671 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Room 5011, Washington, DC 20570, or by calling (202) 273-1940.

APPENDIX B
Explanation of Rights Posted by Order of the
National Labor Relations Board
An Agency of the United States Government

Employees covered by the National Labor Relations Act ("Act") have the right to join together to improve their wages and working conditions, including by organizing a union and bargaining collectively with their employer, and also the right to not do so. This Explanation of Rights contains important information about your rights under this Federal law. The National Labor Relations Board ("NLRB") has ordered Starbucks to provide you with the Explanation of Rights to describe your rights and to provide examples of illegal behavior.

Under the Act, you have the right to:

- Form, join, or assist a union to negotiate with your employer concerning your wages, hours, and other terms and conditions of employment.
- Bargain collectively through your union for a contract with your employer setting your wages, benefits, hours, and other working conditions.
- Discuss your wages and benefits and other terms and conditions of employment and union organizing with your coworkers or a union.
- Take action with one or more coworkers to improve your working conditions by, among other means, raising work-related complaints directly with your employer or with a government agency or seeking help from a union.
- Strike and picket, depending on the purpose or means of the strike or the picketing.
- Choose not to do any of these activities.

It is illegal for your employer to:

- Prohibit you from talking about or soliciting for a union during nonwork time, such as before or after work or during break times; or from distributing union literature during non-work time, in nonwork areas, such as parking lots or break rooms.
- Prohibit you from discussing a union during working time while permitting you to discuss other subjects unrelated to work.
- Question you about your union support or activities, or about the union support or activities of other employees, in a manner that discourages you from engaging in that activity.
- Fire, demote, transfer, warn, suspend, formally coach, or more strictly enforce workplace rules against you, or reduce your hours or change your shift, or otherwise take any adverse action against you, or threaten to take such action,

because you join or support a union, engage in concerted activity for mutual aid and protection, or file unfair labor practice charges or participate in an investigation conducted by the NLRB.

- Impose more onerous and rigorous terms and conditions of employment on you, or threaten to do so, because you join or support a union, or because you engage in concerted activity for mutual aid and protection.
- Threaten you with loss of pay or benefits, or threaten to close your workplace, if you choose a union to represent you.
- Promise or grant promotions, pay raises, or other benefits to discourage union support.
- Solicit grievances or requests for improved terms and conditions of employment from you to discourage union support.
- Prohibit you from wearing union hats, buttons, t-shirts, and pins in the workplace except under special circumstances.
- Surveil or record your union activities or give the impression of doing so.
- Make unilateral changes in your terms and conditions of employment without first providing your union with notice of the proposed changes and affording the union an opportunity to bargain about the changes, except in certain situations.
- Transfer employees to, hire new employees to work in, and overstaff stores with upcoming representation elections to dilute prounion support in the elections.

Illegal conduct will not be permitted. The NLRB enforces the Act by prosecuting violations. If you believe your rights or the rights of others have been violated, you should contact the NLRB promptly to protect your rights, generally within six months of the unlawful activity. You may identify possible violations without your employer or anyone else being informed. The NLRB will investigate possible violations if a charge is filed. Charges may be filed by any person and need not be filed by the employee directly affected by the violation. The NLRB may order an employer to rehire a worker fired in violation of the law, to pay lost wages and benefits, and to cease violating the law.

For more information about your rights, the NLRB, and the Act and for contact information for your nearest regional NLRB office, visit the Agency's website: http://www.nlrb.gov.
Or you can contact the NLRB by calling toll-free: 1-844-762-6572. Hearing impaired callers who wish to speak to an NLRB representative should contact T-Mobile Relay Conference Captioning by visiting its website at https://www.tmobileaccess.com/federal and submitting a form asking its Communications Assistant to call our toll free number at 1-844-762-6572.
If you do not speak or understand English well, you may obtain a translation of this Notice by calling the toll-free number listed above.

This is an official Government Notice and must not be defaced by anyone.