**No. 24-60650**

# In the United States Court of Appeals for the Fifth Circuit

STARBUCKS CORPORATION,
*Petitioner/Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,
*Respondent/Cross-Petitioner.*

*On appeal from a decision of the National Labor Relations Board, Nos. 03-CA-285671, et al.*

## PETITION FOR REHEARING EN BANC


JEFFREY S. HILLER
LITTLER MENDELSON, P.C.
*41 S. High St., Ste. 3250*
*Columbus, OH 43215*

JONATHAN O. LEVINE
LITTLER MENDELSON, P.C.
*833 E. Michigan St., Ste. 900*
*Milwaukee, WI 53202*

LISA S. BLATT
*Counsel of Record*
AMY MASON SAHARIA
DANIELLE J. SOCHACZEVSKI
KEES D. THOMPSON
CLAIRE R. CAHILL
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*
*asaharia@wc.com*

*Counsel for Petitioner/Cross-Respondent*

## CERTIFICATE OF INTERESTED PERSONS

**Case No. 24-60650**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court can evaluate possible disqualification or recusal:

**Petitioner/Cross-Respondent:**

- Starbucks Corporation

**Respondent/Cross-Petitioner:**

- National Labor Relations Board

**Intervenor:**

- Workers United, affiliated with the Service Employees International Union

**Counsel for Petitioner/Cross-Respondent:**

- Lisa S. Blatt
  Amy Mason Saharia
  Danielle J. Sochaczevski
  Kees D. Thompson
  Claire R. Cahill
  Williams & Connolly LLP
  680 Maine Avenue, S.W.
  Washington, DC 20024
  (202) 434-5000
  lblatt@wc.com
  asaharia@wc.com
  dsochaczevski@wc.com
  keesthompson@wc.com

ccahill@wc.com

- Jeffrey S. Hiller
  Littler Mendelson, P.C.
  41 S. High St., Ste. 3250
  Columbus, OH 43215
  (614) 463-4230
  jhiller@littler.com

- Jonathan O. Levine
  Littler Mendelson, P.C.
  833 E. Michigan St., Ste. 900
  Milwaukee, WI 53202
  (414) 291-5537
  jlevine@littler.com

**Counsel for Respondent/Cross-Petitioner:**

- Ruth E. Burdick
  Eric Weitz
  Amy Helen Ginn
  M. Kathleen McKinney
  National Labor Relations Board
  1015 Half Street, SE
  Washington, DC 20570
  (202) 273-2960
  appellatecourt@nlrb.gov
  amy.ginn@nlrb.gov
  eric.weitz@nlrb.gov

**Counsel for Intervenor:**

- Ian H. Hayes
  Michael Dolce
  Hayes Dolce
  135 Delaware Avenue, Ste. 502
  Buffalo, NY 14202
  (716) 608-3427
  ihayes@hayesdolce.com
  (716) 912-3480

mdolce@hayesdolce.com

- Manuel Alfonso Quinto-Pozos
  Deats Durst & Owen, P.L.L.C.
  8140 N. Mopac Expressway, Ste. 250
  Austin, TX 78759
  (512) 474-7896
  mqp@ddollaw.com

Counsel further certifies that Starbucks Corporation has no parent company and that no public company owns 10% or more of its shares.

*/s/ Lisa S. Blatt*
LISA S. BLATT
*Attorney of Record for*
*Petitioner/Cross-Respondent*

## RULE 40(B)(2) STATEMENT

The panel decision warrants rehearing en banc for three reasons. First, the panel's enforcement of the National Labor Relations Board's conclusions on the claims arising under National Labor Relations Act ("NLRA") Sections 8(a)(3) and 8(a)(4) violates *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). The Board's finding of anti-union animus for purposes of those claims rested on its aggregate conclusions that Starbucks violated Section 8(a)(1). RE5. The panel denied enforcement of some of the Section 8(a)(1) conclusions. Op. 41. Only the Board may determine in the first instance whether the surviving Section 8(a)(1) conclusions support the same inference of anti-union animus. The required remedy in that situation is to vacate and remand. The panel, however, nonetheless affirmed the Section 8(a)(3) and 8(a)(4) conclusions. *Id.* The Supreme Court recently summarily reversed in a case presenting the same error. *See Calcutt v. FDIC*, 598 U.S. 623 (2023) (per curiam).

Second, the panel's enforcement of the Board's conclusions on the solicitation-of-grievance and conferral-of-benefits claims under Section 8(a)(1) presents a question of exceptional importance. Under the panel's approach, the Board may infer that an employer's operational improvements in a unionizing location are intended to interfere with union activity solely because

the improvements did not occur before a union campaign. That approach threatens to hamstring employers' operational decisions during union campaigns. *See* Op. 42-43 (Haynes, J., concurring in part and dissenting in part).

Third, the panel's enforcement of the Board's conclusions on the Section 8(a)(3) and 8(a)(4) claims also conflicts with Fifth Circuit and other circuit precedent holding that the Board must assess knowledge of an employee's union activities and anti-union animus on a decision-by-decision basis. *See Poly-Am., Inc. v. NLRB*, 260 F.3d 465, 489 (5th Cir. 2001); *Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408, 412 (5th Cir. 1981); *NLRB v. Mueller Brass Co.*, 509 F.2d 704, 711 (5th Cir. 1975); *accord Stern Produce Co. v. NLRB*, 97 F.4th 1, 12-13 (D.C. Cir. 2024); *Tschiggfrie Props., Ltd. v. NLRB*, 896 F.3d 880, 886 (8th Cir. 2018); *AutoNation, Inc. v. NLRB*, 801 F.3d 767, 775 (7th Cir. 2015). The Board never engaged in that inquiry and improperly inferred knowledge and animus in the abstract. The panel's decision presents a question of exceptional importance because it impacts employment decisions by all employers in the Fifth Circuit with union activity.

*/s/ Lisa S. Blatt*
LISA S. BLATT
*Counsel for Petitioner*

Dated: October 19, 2026

## TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES WARRANTING REHEARING ............... 1

INTRODUCTION ........................................................................................ 1

STATEMENT OF COURSE OF PROCEEDINGS ........................................... 3

STATEMENT OF FACTS ........................................................................... 4

REASONS FOR GRANTING REHEARING ..................................................... 6

I. The Panel's Enforcement of the Board's Section 8(a)(3) and 8(a)(4) Conclusions Conflicts with Supreme Court Precedent ................. 6

II. The Panel's Approach to Conferral of Benefits and Soliciting Grievances under Section 8(a)(1) Presents a Question of Exceptional Importance ........................................................................ 10

III. The Panel's Approach to Inferring Anti-Union Motive under Sections 8(a)(3) and 8(a)(4) Conflicts with Precedent and Presents a Question of Exceptional Importance ...................................... 15

CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

Page

## CASES

*AdvancePierre Foods, Inc.*, 366 NLRB No. 133, slip op. (2018) ........ 14
*AutoNation, Inc. v. NLRB*, 801 F.3d 767 (7th Cir. 2015) ........ 17
*Calcutt v. FDIC*, 598 U.S. 623 (2023) (per curiam) ........ 9, 10
*Delchamps, Inc. v. NLRB*, 588 F.2d 476 (5th Cir. 1979) ........ 14
*Dish Network Corp. v. NLRB*, 953 F.3d 370 (5th Cir. 2020) ........ 9
*NLRB v. Arkema, Inc.*, 710 F.3d 308 (5th Cir. 2013) ........ 7
*NLRB v. Exch. Parts Co.*, 375 U.S. 405 (1964) ........ 2, 11, 13
*NLRB v. Mueller Brass Co.*, 509 F.2d 704 (5th Cir. 1975) ........ 16
*Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408 (5th Cir. 1981) ........ 16
*Poly-Am., Inc. v. NLRB*, 260 F.3d 465 (5th Cir. 2001) ........ 16
*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ........ 1, 2, 6, 10
*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ........ 7, 9
*Stern Produce Co. v. NLRB*, 97 F.4th 1 (D.C. Cir. 2024) ........ 17
*Tesla, Inc. v. NLRB*, 120 F.4th 433 (5th Cir. 2024) (en banc) ........ 16
*Tschiggfrie Props., Ltd. v. NLRB*, 896 F.3d 880 (8th Cir. 2018) ........ 17
*Wal-Mart Stores, Inc.*, 348 NLRB 274 (2006) ........ 14
*Wright Line*, 251 NLRB 1083 (1980) ........ 7

## STATUTE AND RULE

National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ........ 12, 14, 15
§ 158 ........ *passim*
Fed. R. App. P. 40 ........ 7, 15

## STATEMENT OF THE ISSUES WARRANTING REHEARING

1. Whether, under *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), a court that rejects findings on which an agency's conclusion rests may nonetheless enforce that conclusion and the resulting remedies.

2. Whether an employer violates NLRA Section 8(a)(1) by making operational improvements during a union campaign if it had not made those improvements in the unionizing location before the campaign began.

3. Whether, under NLRA Sections 8(a)(3) and 8(a)(4), the Board may find that anti-union animus motivated an employer's individual adverse employment decisions based on generalized evidence of hostility toward a union campaign and knowledge of the employee's union support, without tying that animus or knowledge to particular decisionmaker(s).

## INTRODUCTION

The panel decision creates major operational challenges for businesses with union activity and conflicts with precedents of the Supreme Court, this Circuit, and other circuits.

NLRA Section 8(a)(1) prohibits employers from interfering with, restraining, or coercing employees in the exercise of their right to unionize. 29 U.S.C. § 158(a)(1). An employer violates Section 8(a)(1) by promising or conferring benefits with the "express purpose" of impinging employees' union

rights. *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964). The NLRA also prohibits discrimination in the terms and conditions of employment to discourage union membership, *id.* § 158(a)(3), and because an employee has given testimony related to unfair labor practices, *id.* § 158(a)(4).

As relevant here, each of these provisions turns on the employer's *motive*. The Board failed to conduct the required motive inquiry at every turn, instead inferring bad motive from virtually every action that Starbucks took during a union campaign. And the panel—over Judge Haynes's dissent—blessed the Board's one-sided approach. The panel inferred that Starbucks' operational decisions during a union campaign—such as repairing stores to eliminate pest infestations—reflected bad motive merely because the decisions post-dated the launch of the campaign. The panel inferred that Starbucks' purported hostility to the union campaign infected every disciplinary decision made during the campaign without assessing the motive of individual decisionmakers or whether they knew that the at-issue employees supported the union. And the panel's enforcement of the Board's decision despite rejecting parts of its reasoning produced a classic *Chenery* error of the kind that the Supreme Court recently summarily reversed.

The Court should grant rehearing en banc.

## STATEMENT OF COURSE OF PROCEEDINGS

The Union filed unfair labor practice charges regarding Starbucks' activities in the Buffalo region during the large-scale union campaign in Starbucks' Buffalo region between August 2021 and July 2022. RE24. The NLRB consolidated 33 cases into one mass proceeding. RE24. The NLRB General Counsel issued a complaint alleging numerous violations of NLRA Sections 8(a)(1), 8(a)(3), 8(a)(4), and 8(a)(5). *Id.* An ALJ issued a ruling in March 2023. RE24-134. In December 2024, the Board adopted most of the ALJ's conclusions and ordered sweeping remedies. RE1-24.

The Board ruled, in relevant part, that Starbucks violated Section 8(a)(1) by unlawfully interrogating, threatening, and surveilling employees, as well as soliciting grievances from and conferring benefits to employees during the union campaign. RE3-4. The Board then ruled that Starbucks' combined Section 8(a)(1) violations "warrant an inference" that anti-union animus motivated Starbucks to discipline and discharge union supporters and take other supposedly discriminatory actions in violation of Sections 8(a)(3) and 8(a)(4). RE5.

Starbucks petitioned for review. On September 4, 2026, the panel issued an opinion enforcing the Board's order in substantial part. The majority

(Wiener and Graves, JJ.) upheld many of the Section 8(a)(1) conclusions, but rejected the Board's conclusions of unlawful interrogation, coercive threats, and one finding of unlawful surveillance. Op. 10-23. The majority enforced the Board's Section 8(a)(3) and 8(a)(4) conclusions but directed the Board on remand "to specify the specific violations it relied on from its § 8(a)(1) analysis" to find anti-union animus. *Id.* at 25. The majority denied enforcement of some of the Board's remedies but enforced a bargaining order and public notice-reading. *Id.* at 41.

Judge Haynes dissented from the majority's conclusion that Starbucks violated Section 8(a)(1) by conferring benefits and soliciting grievances and by accelerating a planned national wage increase. *Id.* at 42-44. She also stated that she would not enforce the Board's conclusions that Starbucks violated Sections 8(a)(3) and 8(a)(4). *Id.* at 45.

## STATEMENT OF FACTS

In July 2021, Starbucks appointed a new regional director, Deanna Pusatier, to oversee its 21-store Buffalo region. Pet. Br. 6. Pusatier had revamped Starbucks' stores in Boston and was tasked with doing the same in upstate New York before any union campaign in either region. *Id.*

On August 23, 2021, Workers United launched a union campaign in the Buffalo area. RE33-34. Pusatier arrived in Buffalo the week of the first union petitions. *Id.* She immediately encountered "the worst store condition[s]" she had ever seen. ROA.2830; Op. 42 n.1 (Haynes, J). In particular, "[t]he cleanliness issues were unlike anything [she had] ever seen. There were fruit flies, bees everywhere." ROA.2831. Additionally, "[s]taffing issues were horrendous. . . . We saw a lack of training in every single store at all levels, not just barista but store manager. Everyone was overwhelmed, and the customer experience . . . was absolutely terrible." *Id.*

Starbucks responded by sending in reinforcements. Executives and managers arrived in Buffalo in September 2021—in part to exercise Starbucks' First Amendment right to discuss unionization with employees—and were dismayed by poor conditions and mismanagement, including pest and standing-water issues, overwhelmed supervisors, and unhappy employees. *See* Pet. Br. 6-7 (citing record). The company fired a district manager and brought in new leadership. ROA.2832. Starbucks then set about fixing its Buffalo stores by adding staff and support managers, engaging with employees, and making needed renovations and repairs.

Starbucks also found that many Buffalo employees were not complying with existing policies, most commonly the dress code, attendance, and professional-communication rules. Pet. Br. 42. At all Buffalo-area stores—including stores with no known union organizing—Starbucks implemented "level-setting"—*i.e.*, reminding employees of company policies, re-establishing measures to ensure compliance, and centralizing training. Pet Br. 7. Over the following months, Starbucks discharged numerous employees—some union supporters and some not—for various policy violations, including entering a store alone without a mask and lying about it, dipping a finger into a customer's drink, misreporting COVID-19 symptoms, and repeated tardiness. Op. 7-8.

Eight of the twenty-one Buffalo-area stores unionized, while two voted against it. Op. 2; RE61, 64-65.

## REASONS FOR GRANTING REHEARING

### I. The Panel's Enforcement of the Board's Section 8(a)(3) and 8(a)(4) Conclusions Conflicts with Supreme Court Precedent

The panel enforced the Board's conclusions that Starbucks violated Sections 8(a)(3) and 8(a)(4) even though it rejected part of the reasoning on which those conclusions rested. That decision cannot be reconciled with *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). Reviewing courts "must judge the

propriety of [agency] action solely by the grounds invoked by the agency," and can neither affirm without that reasoning nor substitute their own. *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). The panel erred by affirming the imposed remedies for the same reason. Rehearing is warranted. *See* Fed. R. App. P. 40(b)(2)(B).

NLRA Section 8(a)(3) prohibits discrimination to discourage unionization; Section 8(a)(4) prohibits discrimination against employees because they testify in Board proceedings. 29 U.S.C. §§ 158(a)(3), (4). To establish violations of both Sections, the Board must show, *inter alia*, that (1) the employer knew the employee engaged in protected activity, and (2) the protected activity was a motivating factor for the adverse action against the employee—*i.e.*, that the action was motivated by anti-union animus. Op. 24; *NLRB v. Arkema, Inc.*, 710 F.3d 308, 321 (5th Cir. 2013) (citing *Wright Line*, 251 NLRB 1083 (1980)). The Board concluded that nearly every act enforcing Starbucks' preexisting rules against union supporters in Buffalo violated these provisions. Take one example: the Board concluded that a manager discriminated against union supporters by enforcing the company's preexisting policy requiring that milk be refrigerated between uses. RE110-111. The Board did not, however, identify animus for each challenged action.

For example, it did not find that the manager who instructed employees to refrigerate the milk knew the employees were union supporters or gave that instruction because of anti-union animus. Rather, as the panel recognized, the Board found that anti-union animus existed across the entire Buffalo region because of the supposed "barrage" of Section 8(a)(1) violations it found. Op. 27 (quoting RE5).

The panel, however, rejected some of the Board's Section 8(a)(1) conclusions. Op. 19-23; *supra* p. 4. Because the Board drew its animus inference from the Section 8(a)(1) violations in the aggregate, without tying any particular violation to any particular adverse action, a reviewing court cannot know what inference (if any) the Board would draw from only the Section 8(a)(1) violations the panel enforced.

Judge Haynes saw the problem. She noted that several Section 8(a)(1) findings "rest on shaky ground (at best)" and that the Board failed "to specify which § 8(a)(1) violations informed its § 8(a)(3) and (4) conclusions." Op. 45. Accordingly, Judge Haynes stated she "would deny enforcement of the Board's decision or, at a minimum, remand" the Section 8(a)(3) and 8(a)(4) conclusions for further consideration. *Id.*

The majority seemed to recognize the issue, but it responded the wrong way. It stated that the Board's Section 8(a)(3) and 8(a)(4) conclusions "necessitate[] remand for the Board to specify the specific violations it relied on from its § 8(a)(1) analysis." Op. 25. But even while recognizing that the Board needed to redo its animus analysis, the majority still enforced the Section 8(a)(3) and 8(a)(4) conclusions, reasoning that the record contained enough evidence to infer animus. Op. 25-26.

That was error. A court can affirm "solely by the grounds invoked by the agency." *Chenery*, 332 U.S. at 196. That rule applies to Board decisions. For example, in *Dish Network Corp. v. NLRB*, 953 F.3d 370 (5th Cir. 2020), the Court declined to uphold an order on grounds the Board had not adopted. *Id.* at 379-80. Once a reviewing court identifies a flaw in the agency's reasoning, "the function of the reviewing court ends," and the proper course is to remand "for further consideration." *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) (per curiam) (citations omitted).[1]

[1] An agency's error cannot be excused as harmless by assuming remand would be futile. That "may" be appropriate where there "is not the slightest uncertainty as to the outcome" on remand, like where the agency "was *required*" to act as it did. *Calcutt*, 598 U.S. at 629-30 (citations omitted). That "narrow" exception does not apply where, as here, the agency's judgment is "highly fact specific and contextual." *Id.* at 630.

The Supreme Court summarily reversed in near-identical circumstances. In *Calcutt*, the Sixth Circuit affirmed the FDIC's imposition of sanctions even though it concluded that the agency had based those sanctions in part on effects of the sanctioned party's conduct that did not qualify as statutory harms. 598 U.S. at 628. The Supreme Court summarily reversed, holding that the court of appeals had "violated" *Chenery*'s commands. *Id.* at 624-25. The panel's decision presents the same *Chenery* violation. Because the panel's decision conflicts with *Chenery*, rehearing is warranted.

## II. The Panel's Approach to Conferral of Benefits and Soliciting Grievances under Section 8(a)(1) Presents a Question of Exceptional Importance

The majority's approach to Section 8(a)(1) solicitation-of-grievances and conferral-of-benefits violations permits unlawful motive to be inferred from mere timing, even when an employer has legitimate reasons to fix health, safety, and operational deficiencies. This decision presents a question of exceptional importance because the ruling affects every employer in the Fifth Circuit that discovers workplace deficiencies during union activity.

Section 8(a)(1) prohibits interfering with, restraining, or coercing employees' exercise of their collective-bargaining rights. 29 U.S.C. § 158(a)(1).

One way an employer can violate Section 8(a)(1) is through "conduct immediately favorable to employees"—including promising or conferring benefits (or soliciting employees' grievances)—"undertaken with the express purpose of impinging upon their freedom of choice for or against unionization" and "reasonably calculated to have that effect." *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964). For such conduct to violate Section 8(a)(1), the employer must have the "motive" to interfere with unionization. Op. 11.

The majority affirmed the Board's conclusion that Starbucks' solicitation of grievances and conferral of benefits during the union campaign violated Section 8(a)(1). *Id.* For example, the majority affirmed the conclusion that Starbucks violated Section 8(a)(1) by ridding stores of bees and fruit flies during the union campaign. *See* Op. 42 & n.1 (Haynes, J. concurring in part and dissenting in part); RE81; RE96; RE122; ROA.3015, 3034. Despite recognizing that motive is the key element, the majority (like the Board) did not analyze Starbucks' motive for taking each action. Instead, the majority inferred bad motive from timing, observing that "Starbucks did not implement any such measures for improvement until only after union activity began." Op. 12. In other words, because Starbucks had not fixed the bee and fruit-fly

problem before the union campaign, the Board inferred a bad motive from its decision to do so after the campaign began.

The majority's focus on timing alone conflates motive and but-for causation. As Starbucks explained, even if it discovered operational problems *because* executives came to Buffalo after learning of union activity, that does not show Starbucks' *motive* for fixing the problems was to coerce employees against unionizing. Pet. Br. 25. The majority called Starbucks' argument about the difference between motive and but-for causation a "novel analytical distinction which we need not consider." Op. 13. Not so. The two legal concepts are distinct. An employer may learn of operational problems *as a result of* union activity. But Section 8(a)(1) would prohibit the company from fixing those problems *for the purpose of* dissuading unionization.

The majority's approach leads to the "extraordinary" conclusion (in Judge Haynes's words) that the "NLRA required Starbucks to violate sanitation codes once it discovered the rampant health and safety issues plaguing its Buffalo stores." Op. 43 (cleaned up). As Judge Haynes explained: "Starbucks undertook its store improvement efforts once it learned, during the union campaign, that its Buffalo stores were suffering from widespread health and safety problems, including 'inadequate . . . store spaces or layouts,

damaged . . . structural components, broken or outdated equipment, and pest issues.'" *Id.* at 42. In her view, "Starbucks's actions are most properly understood as appropriate efforts that it undertook once it learned of the pervasive, serious issues in those stores—part of its normal practices to improve the health and safety of its Buffalo stores." *Id.*

This case is far afield from *Exchange Parts*. There, an employer facing a union campaign announced a new vacation day; sent employees a letter detailing new vacation benefits and a new overtime system; and stated in the letter: "The Union can't put any of those things in your envelope—only the Company can do that." 375 U.S. at 406-07. The Supreme Court held that when "the *motive is otherwise established*, an employer is not free to violate [Section] 8(a)(1) by conferring benefits." *Id.* at 410 (emphasis added). Here, by contrast, the alleged "benefits" that Starbucks conferred—for example, store repairs and centralized training—were designed to address the cleanliness and customer-experience issues that Starbucks discovered after the union campaign launched. Pet. Br. 22-23; ROA.2830-31.

In other cases, the Board has recognized that union activity should not preclude employers from making needed repairs or taking steps to ensure customer-friendly, safe, and operational stores, if they would do so in the

ordinary course. For instance, the NLRA "does not require an employer to leave a drain clogged." *Wal-Mart Stores, Inc.*, 348 NLRB 274, 282 (2006). Nor does it "keep an employer from equipping its workers with appropriate tools" during union campaigns. *Id.* And a union campaign is "not a padlock on an employer's ability to update and revamp its operations, including its wage structure." *AdvancePierre Foods, Inc.*, 366 NLRB No. 133, slip op. at 34 (2018).

The majority similarly inferred bad motive from mere timing in connection with Starbucks' announced modification of a pre-planned nationwide wage increase. Op. 14-15. "[A] wage increase made during a union organizational campaign is not forbidden unless it is granted for the purpose of restraining employees in the free exercise of their right of choice of whether to unionize." *Delchamps, Inc. v. NLRB*, 588 F.2d 476, 479 (5th Cir. 1979). No evidence proved that Starbucks' wage announcement was motivated to quell union activity. As Judge Haynes agreed with Starbucks, "any inference of such motive is unreasonable" here, because the "'conclusion that Starbucks effected an (already announced) nationwide wage increase across 9,000 stores to restrain union organizing in Buffalo is illogical.'" Op. 44.

This issue presents a question of exceptional importance to employers. *See* Fed. R. App. P. 40(b)(2)(D). The panel's approach freezes employers from addressing operational issues during union campaigns, lest they risk liability for supposedly conferring benefits on employees. Nothing in the NLRA imposes that straitjacket on employers.

## III. The Panel's Approach to Inferring Anti-Union Motive under Sections 8(a)(3) and 8(a)(4) Conflicts with Precedent and Presents a Question of Exceptional Importance

En banc rehearing is also necessary to correct the panel's erroneous enforcement of the Board's conclusions under Section 8(a)(3) and 8(a)(4). As noted above, those Sections prohibit discrimination and require a finding that an employer's action against an employee was motivated by anti-union animus. *Supra* p. 7. The panel accepted the Board's inference that "an overwhelming number of the adverse employment actions" in Buffalo resulted from Starbucks' supposed animus toward the union campaign. Op. 27-28. The panel acknowledged that the "at-issue decisions were made by myriad managers." *Id.* But the panel did not identify evidence that each manager knew the at-issue employees were union supporters, observing only that the "several" managers "were, or should have been, aware" of the employees' union support. Op. 27. Nor did the panel identify evidence that each manager took adverse

action *because* the employees were union supporters. The panel instead endorsed the Board's inference of animus across numerous decisions by different supervisors over a multi-month period.

Failing to ask whether a particular manager knew that an employee supported the union and whether that manager's decision was motivated by anti-union animus conflicts with this Court's and other circuits' precedents. As this Court has explained, the Board must prove that "the particular supervisor responsible for the firing knew about the discharged employee's union activities." *Poly-Am., Inc. v. NLRB*, 260 F.3d 465, 489 (5th Cir. 2001) (cleaned up). It is impermissible to simply "impute" the knowledge of other supervisors to the actual decisionmaker. *Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408, 412 (5th Cir. 1981). And the Board must establish "a reasonable inference of causal connection between the employer's antiunion motivation and the employee's discharge." *NLRB v. Mueller Brass Co.*, 509 F.2d 704, 711 (5th Cir. 1975); *see also Tesla, Inc. v. NLRB*, 120 F.4th 433, 440 (5th Cir. 2024) (en banc) (explaining that "the NLRB failed to consider the contradictory fact that the decisionmaker who authorized [employee]'s firing . . . had no anti-union animus").

Other circuits agree there must be "a causal connection between the employer's anti-union animus and the specific adverse employment action on the part of the decisionmaker." *AutoNation, Inc. v. NLRB*, 801 F.3d 767, 775 (7th Cir. 2015) (citations omitted); *accord Tschiggfrie Props., Ltd. v. NLRB*, 896 F.3d 880, 886 (8th Cir. 2018). "[S]imple animus" and "general hostility" do not suffice. *Stern Produce Co. v. NLRB*, 97 F.4th 1, 12 (D.C. Cir. 2024). Neither the Board nor the panel identified more than "general hostility."

The panel compounded the error by limiting the evidence Starbucks could use, which prevented meaningful rebuttal of the Board's animus inference. Although the Board was permitted to point to generalized, region-wide evidence to establish knowledge of union activity and animus *by* Starbucks, Starbucks could rebut the animus inference only with the most specific evidence: past instances of the very same discipline, at the very same store, before the campaign began. This artificial restriction excluded "more than 100 examples" of comparable discipline proffered by Starbucks. Op. 26. The Board disregarded comparable discipline outside the Buffalo and Rochester areas. RE31 n.32. And the Board ignored dozens of comparators that Starbucks disciplined after the union campaign began, even at non-unionizing stores. *See* Reply Br. 21. These errors led the panel majority to

reason that "[i]t is debatably suspicious, and therefore reasonable to infer, that the common denominator among the employees who were discharged all around the same period is that they were all affiliated with union activity." Op. 31. The record contradicts that inference: Starbucks discharged non-union supporters in Buffalo during this period as well. RE92-94.

Correcting this mistaken analysis is exceptionally important. Under the panel's approach, once the Board finds hostility in the abstract, any manager's disciplinary decision at any location becomes presumptively unlawful unless the employer can identify the same discipline occurring at the same store before the campaign. The Court should grant rehearing to restore the decision-by-decision inquiry that courts of appeals (including this one) uniformly require.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

_/s/ Lisa S. Blatt_
LISA S. BLATT
AMY MASON SAHARIA
DANIELLE J. SOCHACZEVSKI
KEES D. THOMPSON
CLAIRE R. CAHILL
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*
*asaharia@wc.com*

JEFFREY S. HILLER
LITTLER MENDELSON, P.C.
*41 S. High St., Ste. 3250*
*Columbus, OH 43215*

JONATHAN O. LEVINE
LITTLER MENDELSON, P.C.
*833 E. Michigan St., Ste. 900*
*Milwaukee, WI 53202*

DATED: OCTOBER 19, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which suffices as notice to all counsel of record.

DATED: OCTOBER 19, 2026

/s/ *Lisa S. Blatt*
LISA S. BLATT

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Rule 32(a)(7)(B) and Rule 40(d)(3) of the Federal Rules of Appellate Procedure, that the attached Petition for Rehearing En Banc contains 3,897 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point CenturyExpd BT.

DATED: OCTOBER 19, 2026

/s/ *Lisa S. Blatt*
LISA S. BLATT