**24-60650**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross Petitioner.*

*On appeal from a decision of the National Labor Relations Board, Nos. 03-CA-285671, et al.*

# BRIEF OF *AMICI CURIAE* COALITION FOR A DEMOCRATIC WORKPLACE, NATIONAL RETAIL FEDERATION, AND RESTAURANT LAW CENTER IN SUPPORT GRANTING STARBUCKS CORPORATION'S PETITION FOR REHEARING *EN BANC*

Owen R. Wolfe
*Counsel of Record*
Seyfarth Shaw LLP
620 Eighth Avenue – 32nd Floor
New York, NY 10018
(212) 218-5500
OWolfe@seyfarth.com

Joshua L. Ditelberg*
Bret W. Vetter*
Seyfarth Shaw LLP
233 S. Wacker Drive – Suite 8000
Chicago, IL 60606
(312) 460-5000
jditelberg@seyfarth.com
bvetter@seyfarth.com
**Not admitted to practice in this Court*

October 26, 2026

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

Amici Curiae:

Coalition for a Democratic Workplace
National Retail Federation
Restaurant Law Center

Counsel for Amici Curiae:

Owen R. Wolfe
*Counsel of Record*
Seyfarth Shaw LLP
620 Eighth Avenue – 32nd Floor
New York, NY 10018
(212) 218-5500
OWolfe@seyfarth.com

Joshua L. Ditelberg*
Bret W. Vetter*
Seyfarth Shaw LLP
233 S. Wacker Drive – Suite 8000
Chicago, IL 60606
(312) 460-5000
jditelberg@seyfarth.com
bvetter@seyfarth.com

**Not admitted to practice in this Court*

Amici curiae Coalition for a Democratic Workplace, National Retail Federation, and Restaurant Law Center each have no parent corporation, and no publicly held corporation owns 10% or more of their stock. Except as identified above, counsel is unaware of any other person or entity having a financial interest in the outcome of this litigation beyond those previously disclosed by the parties that is required to be disclosed under Fifth Circuit Rule 28.2.1.

/s/ *Owen R. Wolfe*
*Counsel of Record*
for Amici Curiae
Coalition for a Democratic Workplace,
National Restaurant Association, and
National Retail Federation

# TABLE OF CONTENTS

**Page**

**INTEREST OF AMICI CURIAE. ....................................................1**

**ARGUMENT ........................................................................................2**

**I. THE PANEL'S TREATMENT OF CAUSATION RISKS NECESSARILY CONVERTING THE CAUSE OF AN EMPLOYER'S KNOWLEDGE OF WORKPLACE DEFICIENCIES INTO AN UNLAWFUL MOTIVE FOR RECTIFYING THOSE DEFICIENCIES...........................................3**

**II. THE CAUSAL DISTINCTION BETWEEN MOTIVE AND PURPOSE IS CRITICAL WHERE AN EMPLOYER APPLIES ITS PREEXISTING POLICIES AND PRACTICES TO NEWLY DISCOVERED CONDITIONS. ............................................7**

**III. THE PROBLEM IS ESPECIALLY IMPORTANT WHERE AN INDEPENDENT LEGAL OR CONTRACTUAL OBLIGATION REQUIRES CORRECTIVE ACTION. .......................8**

**IV. REHEARING EN BANC IS WARRANTED BECAUSE THE PANEL DECISION LEAVES EMPLOYERS WITHOUT AN ADMINISTRABLE RULE FOR SATISFYING THEIR INDEPENDENT WORKPLACE OBLIGATIONS. ..........................11**

**CONCLUSION.......................................................................................11**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advance Pierre Foods, Inc.*, 366 NLRB No. 133 (2018) .......................... 6

*American Sunroof Corp.*, 248 NLRB 748 (1980) enforced in relevant part, 667 F.2d 20 (6th Cir. 1981) .................................................... 6, 7

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) .......... 9

*NLRB v. Exch. Parts Co.*, 375 U.S. 405 (1964) ............................. 3, 4, 5

*Southern Steamship Co. v. NLRB*, 316 U.S. 31, 47 (1942) ...................... 9

*Starbucks Corp. v. NLRB*, 2026 U.S. App. LEXIS 27415 (2026) .... 3, 4, 6

*Wal-Mart Stores, Inc.*, 348 NLRB 274 (2006) ...................................... 6

*Yale New Haven Hospital*, 309 NLRB 363 (1992) ................... ............ 6

## Statutes

National Labor Relations Act, 29 U.S.C. § 151 et seq. ........... ..... *passim*

## Other Authorities

Fed. R. App. P 29(b) .......................................................................... 2

## INTEREST OF AMICI CURIAE

The Coalition for a Democratic Workplace (CDW) is a trade organization composed of hundreds of organizations representing millions of businesses that employ tens of millions of workers nationwide in nearly every industry. Its members include national, regional, and state employer associations and businesses ranging from single-worksite employers to companies with integrated multistate operations. They share an interest in a lawful, balanced, and predictable federal labor-relations system.

Established in 1911, the National Retail Federation (NRF) is the world's largest retail trade association and the voice of retail worldwide. Retail is the largest private-sector employer in the United States. The NRF's membership includes retailers of all sizes, formats, and channels of distribution, spanning all industries that sell goods and services to consumers. The NRF provides courts with the perspective of the retail industry on important legal issues impacting its members.

The Restaurant Law Center (RLC) is the only independent public policy organization created specifically to represent the interests of the food service industry in the courts. The RLC represents a labor-

intensive industry comprised of over one million restaurants and other food-service outlets employing about 16 million people—approximately 10 percent of the United States workforce. In addition, the RLC represents the interests of its state restaurant association affiliates, many of which have both food service establishments and hotels as members, as well as other hospitality interests.

CDW, NRA and RLC file this brief under Federal Rule of Appellate Procedure (FRAP) 29(b). In accordance with FRAP 29(b), CDW states that no party's counsel authored this brief, no party or its counsel contributed money to prepare the brief, and no person other than CDW, NRF and their members, or their counsel contributed money intended to fund the preparation or submission of the brief.

## ARGUMENT

The panel's decision creates a dilemma with serious implications for employers throughout this Circuit: What can an employer do when union activity results in it discovering a workplace deficiency that must be corrected to comply with its preexisting workplace policies or practices, or an independent legal or contractual obligation?

There is a fundamental difference between activity protected under the National Labor Relations Act (NLRA or Act) causing an employer to discover a workplace deficiency and protected activity motivating the employer to correct that problem **for an unlawful purpose**. The former establishes, at most, but-for causation as to management's acquisition of knowledge. It does not establish anti-union motive for management's subsequent action.

The panel decision does not adequately account for that distinction. Employers throughout this Circuit need to know whether the Act proscribes them from correcting workplace deficiencies that may be contrary to law, contractual obligations, or preexisting policies and practices merely because NLRA-protected activity brought that deficiency to management's attention.

## I. The Panel's Treatment of Causation Risks Necessarily Converting the Cause of an Employer's Knowledge of Workplace Deficiencies Into an Unlawful Motive For Rectifying Those Deficiencies.

In *Exchange Parts*, the Supreme Court emphasized that Section 8(a)(1) of the Act requires determining an employer's motive in acting in response to NLRA-protected activity. *See Starbucks Corp. v. NLRB*,

2026 U.S. App. LEXIS 27415 at *13-14 (2026) (citing *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 410 (1964)).

Thus, an employer does not violate Section 8(a)(1) of the Act simply because employees receive an improvement during a union organizing campaign. Rather, the fundamental question is whether the employer made workplace changes **for the purpose** of interfering with employees' protected choice of whether to be union represented.

But having identified motive as the governing inquiry, the panel fixated on the timing of Starbucks' corrective action. According to the panel, the problem with Starbucks's reliance on its nationwide practices as the basis for undertaking certain workplace actions in its Buffalo region was that it did not explain "why Starbucks focused and amplified these measures in the Buffalo region only after union organizing activity began." *Starbucks Corp.*, *supra* at *14-15. The panel similarly characterized the dispositive question as "why Starbucks remedied safety violations only after the onset of union activity." *Id.* at *16.

However, there are two different causal propositions being conflated. NLRA-protected activity may cause management to inspect a workplace or devote additional attention to it, which in turn causes

management to discover a preexisting problem. But management may not correct such a problem for the **purpose** of discouraging protected activity. The first proposition concerns the source of the employer's information regarding a workplace deficiency. Only the second concerns the employer's motive for taking action and supplies the unlawful purpose *Exchange Parts* requires.

By way of example, suppose employees announce a union organizing campaign. That announcement causes a corporate safety official to visit a facility. The official discovers exposed electrical wiring that violates an applicable safety policy. The employer corrects the wiring because its safety obligations call for the hazard to be corrected. In that circumstance, the organizing campaign is the but-for cause of the employer's knowledge. But it does not follow that the employer made the repair for the purpose of discouraging union organizing.

The panel's emphasis on the fact that Starbucks made certain improvements occurred "only after" union organizing began would wrongfully have the source of knowledge determine motive. But *Exchange Parts* does not establish a blanket union campaign freeze on workplace improvements. It only condemns favorable conduct

"undertaken with the express purpose of impinging upon [employees'] freedom of choice for or against unionization" and reasonably calculated to accomplish that result. 375 U.S. at 409.

The advent of union organizing does not require an employer to stop conducting its business in the ordinary course or deprive employees of improvements they otherwise would have received. Indeed, the Board itself has recognized as much. An employer may justify the timing of an improvement by demonstrating a "legitimate business reason," *Yale New Haven Hospital*, 309 NLRB 363, 366 (1992), and may satisfy its burden by showing that benefits were "part of an already established company policy and the employer did not deviate from that policy upon the advent of the Union," *American Sunroof Corp.*, 248 NLRB 748, 748 (1980), enforced in relevant part, 667 F.2d 20 (6th Cir. 1981). *See also Wal-Mart Stores, Inc.*, 348 NLRB 274, 282 (2006)[1]; *Advance Pierre Foods, Inc.*, 366 NLRB No. 133, slip op. at 34 (2018).

[1] Judge Haynes rightly underscored in dissenting from the panel decision that "'it would be quite extraordinary to conclude that the [NLRA] required [Starbucks] to violate sanitation codes' once it discovered the rampant health and safety issues plaguing its Buffalo stores." *Starbucks Corp.*, *supra*, at *58-59 (citing *Wal-Mart Stores, Inc.*, 348 NLRB at 282).

## II. The Causal Distinction Between Motive and Purpose is Critical Where an Employer Applies Its Preexisting Policies and Practices to Newly Discovered Conditions.

The panel's reasoning is consequential for employers seeking to continue applying workplace policies and practices that existed before any union organizing began. Employers routinely maintain standards governing health and safety, sanitation, security, maintenance, employee conduct, and numerous other operational matters. NLRA-protected activity does not erase those standards. *See American Sunroof Corp.*, 248 NLRB at 748. Nor should it disable an employer from applying them when management attention following organizing activity happens to reveal conditions inconsistent with them.

Where an employer responds to a newly discovered condition by applying a bona fide policy or practice that predates the organizing activity, the relevant question remains **why** the employer took the corrective action once the condition became known. A preexisting standard provides objective evidence of a reason for the employer's action independent of employees' protected activity.

Recognizing that distinction does not immunize pretextual enforcement. Evidence that an employer invented a purported policy

after organizing began, singled out union supporters, or took measures materially different from those ordinarily taken in comparable circumstances may support an inference of unlawful motive. But the NLRA does not make an employer's prior failure to discover or address a deficiency dispositive once management actually becomes aware of it.

This is particularly true for employers operating geographically dispersed businesses. A company may establish nationwide standards while local managers apply them imperfectly. Senior management may not learn that a particular location has departed from those standards until some event attracts greater attention to that workplace, such as union activity. The NLRA does not require the company to perpetuate the location's administrative shortcomings – which could involve matters of health, safety, or other public interests – merely because correcting them would result in improved working conditions.

## III. The Problem Is Especially Important Where An Independent Legal Or Contractual Obligation Requires Corrective Action.

The problem becomes more acute where corrective action rests not merely on an employer's preexisting policy or practice, but on an obligation imposed independently of the employer. In that

circumstance, maintaining the preexisting condition may not even be legally permissible.

For example, Supreme Court precedent requires the Board to accommodate the NLRA to other federal statutory commands. As the Court explained in *Southern Steamship Co. v. NLRB*, "the Board [is not] to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives. Frequently the entire scope of Congressional purpose calls for careful accommodation of one statutory scheme to another[.]" 316 U.S. 31, 47 (1942). *Hoffman Plastic* subsequently applied the same principle, emphasizing that the Board may not pursue NLRA policies at the expense of independent federal statutes and policies. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002) ("Since [*Southern Steamship Co.*] we have accordingly never deferred to the Board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA.").

Once an employer discovers a condition violating an independently applicable safety, health, or other legal requirement, preservation of the status quo may cease to be a lawful option. The

NLRA does not magically eviscerate a range of other legal obligations and policy concerns.

The Act should not force the employer to choose between correcting a violation and risking that the improvement will be characterized as an unlawful benefit, or leaving the condition uncorrected and knowingly violating another legal standard. Otherwise, the employer may be in jeopardy of a range of statutory or common-law tort liability – including in many instances liquidated or punitive damages – for failing to address known hazards or other workplace deficiencies. And being effectively barred from remediating these conditions puts the employer's brand reputation at risk. None of those legitimate employer concerns turns on union animosity.

Contractual and similar obligations reinforce the same point. Preexisting insurance requirements, lease covenants, customer commitments, and equipment-maintenance obligations may independently call for corrective action once a deficiency becomes known. Such obligations are likewise evidence that an employer has a reason for acting independent of employees' protected activity, and such evidence is foreclosed by applying the panel's but-for style reasoning.

## IV. Rehearing En Banc Is Warranted Because the Panel Decision Leaves Employers Without An Administrable Rule For Satisfying Their Independent Workplace Obligations.

This case thus presents a serious problem for the amici. The panel decision leaves employers without a safe harbor for resolving situations where corrective action indisputably is required by law, contract, or an established preexisting standard. Does that employer correct a known violation of its safety policies and risk having the timing characterized conveying an unlawful benefit? Does it preserve the status quo or risk violating OSHA, a health or fire code, or another independent obligation? The panel treats the timing of management's acquisition of knowledge as determinative without identifying an administrable path forward for an employer whose response to that knowledge has a demonstrably independent cause. Rehearing *en banc* would allow the Court to supply that critical direction.

## CONCLUSION

For the foregoing reasons, the Court should grant Starbucks' petition for rehearing *en banc*.

Respectfully submitted,

COALITION FOR A
DEMOCRATIC WORKPLACE

NATIONAL RETAIL
FEDERATION

RESTAURANT LAW CENTER

/s/ *Owen R. Wolfe*
*Counsel of Record*
Seyfarth Shaw LLP
620 Eighth Avenue – 32nd Floor
New York, NY 10018
(212) 218-5500
OWolfe@seyfarth.com

Joshua L. Ditelberg*
Bret W. Vetter*
Seyfarth Shaw LLP
233 S. Wacker Drive – Suite 8000
Chicago, IL 60606
(312) 460-5000
jditelberg@seyfarth.com
bvetter@seyfarth.com

**Not admitted to practice in this Court*

DATED: October 26, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s/ *Owen R. Wolfe*
*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief complies with the type-volume limitation set forth in set forth in Fed. R. App. P. 29(b)(4). This brief contains 1,948 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word in 14-point font size in Century Schoolbook.

/s/ *Owen R. Wolfe*
*Counsel of Record*

Dated: October 26, 2026