No. 24-60650

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**STARBUCKS CORPORATION,**

**Petitioner/Cross-Respondent**

**v.**

**NATIONAL LABOR RELATIONS BOARD,**

**Respondent/Cross-Petitioner**

---

**ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD**

---

# RESPONSE OF THE NATIONAL LABOR RELATIONS BOARD IN OPPOSITION TO PETITION FOR REHEARING

---

**AMY H. GINN**
*Supervisory Attorney*

**MADELINE TERLAP**
*Attorney*

***National Labor Relations Board***
**1015 Half Street, SE**
**Washington, DC 20570**
**(202) 273-2942**
**(202) 273-3827**

CRYSTAL S. CAREY
*General Counsel*
LYNISA B. MICHALSKI
*Acting Deputy General Counsel*
PETER SUNG OHR
*Associate General Counsel*
MEREDITH JASON
*Deputy Associate General Counsel*

National Labor Relations Board

# TABLE OF CONTENTS

**Headings** **Page(s)**

Table of contents ..... i

Table of authorities ..... ii

Statement in opposition to rehearing *en banc* ..... 1

Statement of the case ..... 1

Argument ..... 5

I. The Panel's fact-based determination upholding the Board's finding that Starbucks acted with unlawful motive in soliciting grievances and granting benefits does not present a question of exceptional importance ..... 5

II. The Panel correctly upheld the Board's findings of animus on the bases relied upon by the Board, raising no conflict with the Supreme Court's decision in *SEC v. Chenery* ..... 8

III. The Panel upheld the Board's finding of anti-union motive based on substantial evidence and in accordance with precedent ..... 12

Conclusion ..... 17

Certificate of service ..... 18

Certificate of compliance ..... 19

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AdvancePierre Foods, Inc.*,
366 NLRB No. 133 (2018), *enforced*,
966 F.3d 813 (D.C. Cir. 2020)....8

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962)....9

*Calcutt v. Fed. Deposit Ins. Corp.*,
598 U.S. 623 (2023)....9-10

*Commc'n Workers of Am., Loc. 5008 v. NLRB*,
784 F.2d 847 (7th Cir. 1986)....11

*Delchamps, Inc. v. NLRB*,
588 F.2d 476 (5th Cir. 1979)....6

*Marathon LeTourneau Co. v. NLRB*,
699 F.2d 248 (5th Cir. 1983)....13

*Metro. Edison Co. v. NLRB*,
460 U.S. 693 (1984)....4

*NLRB v. Allied Aviation Fueling of Dallas LP*,
490 F.3d 374 (5th Cir. 2007)....16

*NLRB v. Exch. Parts Co.*,
375 U.S. 405 (1964)....3, 6

*NLRB v. Mueller Brass Co.*,
509 F.2d 704 (5th Cir. 1975)....15

*NLRB v. Transp. Mgmt. Corp.*,
462 U.S. 393 (1983)....4

*Pioneer Natural Gas Co. v. NLRB*,
662 F.2d 408 (5th Cir. 1981)....15

*Poly-America, Inc. v. NLRB*,
260 F.3d 465 (5th Cir. 2001)....15

## TABLE OF AUTHORITIES (cont'd)

**Cases** **Page(s)**

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 9-10

*Starbucks Corp. v. NLRB*,
191 F.4th 325 (5th Cir. 2026), *enforcing in part*,
374 NLRB No. 10 (Dec. 10, 2024) .......... 1-8, 10-16

*Syracuse Peace Council v. FCC*,
867 F.2d 654 (D.C. Cir. 1989) .......... 11

*Taylor v. McKeithen*,
407 U.S. 191 (1972) .......... 13

*Tesla, Inc. v. NLRB*,
120 F.4th 433 (5th Cir. 2024) .......... 15

*UNF W. v. NLRB*,
844 F.3d 451 (5th Cir. 2016) .......... 3

*United States v. Garza*,
165 F.3d 312 (5th Cir. 1999) .......... 13

*Valmont Indus., Inc. v. NLRB*,
244 F.3d 454 (5th Cir. 2001) .......... 11, 14

*Wal-Mart Stores, Inc.*,
348 NLRB 274 (2006) .......... 8

*Wright Line*,
251 NLRB 1083 (1980), *enforced on other grounds*,
662 F.2d 899 (1st Cir. 1981) .......... 4

## TABLE OF AUTHORITIES (cont'd)

**Statutes** **Page(s)**

National Labor Relations Act, as amended
(29 U.S.C. § 151 et seq.)

Section 7 (29 U.S.C. § 157) ....................3
Section 8(a)(1) (29 U.S.C. § 158(a)(1)) ....................3
Section 8(a)(3) (29 U.S.C. § 158(a)(3)) ....................4
Section 8(a)(4) (29 U.S.C. § 158(a)(4)) ....................4
Section 8(a)(5) (29 U.S.C. § 158(a)(5)) ....................5

**Rules** **Page(s)**

Fed. R. App. P. 40(b)(2) ....................1

## STATEMENT IN OPPOSITION TO REHEARING *EN BANC*

On September 4, 2026, a panel of the Court (Circuit Judges Wiener and Graves; Judge Haynes, dissenting in relevant part) issued an opinion enforcing in substantial part an order of the National Labor Relations Board, in which the Board found that Starbucks committed numerous violations of the National Labor Relations Act in response to a union-organizing campaign at stores in the Buffalo, New York area. *Starbucks Corp. v. NLRB*, 191 F.4th 325 (5th Cir. 2026), *enforcing in part* 374 NLRB No. 10 (Dec. 16, 2024). (RE.1-134.)[1] Starbucks filed a petition for rehearing *en banc*, and the Court ordered a response.

Starbucks's petition presents no issue of "exceptional importance," nor establishes any "extraordinary" circumstances that would warrant *en banc* review. Fed. R. App. P. 40(b)(2); 5th Cir. R. 40.2.1. The panel's decision was correct and does not conflict with Supreme Court, Fifth Circuit, or out-of-circuit precedent. The petition should be denied.

## STATEMENT OF THE CASE

1. In August 2021, employees at several Buffalo-area Starbucks stores began a union-organizing campaign. 191 F.4th at 335. Between September 2021 and March 2022, Workers United ("the Union") petitioned to represent employees at ten area stores. *Id.*

---

[1] "RE" refers to the record excerpts filed with the Court, which include the Board decision under review. "Pet." refers to Starbucks's petition.

Shortly after the employees announced the union-organizing campaign, Starbucks flew a battalion of corporate officials to Buffalo to swiftly take action. *Id.* A team of senior executives as well as district managers from stores around the country arrived to serve as support managers in local stores. *Id.* The senior executives met frequently with local managers to discuss the union campaign, instructing them to prohibit employees from wearing pro-union pins in stores, to more strictly enforce policies such as dress code and attendance, and to keep a constant managerial presence to disrupt and deter union activities—all contrary to prior practice. *Id.* at 335-37.

Upon arriving in Buffalo, the outside executives and managers immediately began asking employees how Starbucks could make working conditions better. *Id.* at 335-36. Starbucks held "listening sessions" which it represented to employees were, at least in part, in response to the union activity. *Id.* Starbucks solicited feedback and complaints from employees during those listening sessions and during shifts at stores. *Id.*

In September 2021, Starbucks began repairing and renovating Buffalo-area stores markedly faster than before, eliminating delays that typically extended to one year or more. *Id.* at 336. As one store manager explained, any attempt to address issues in the past had been futile because Starbucks had represented that no funds were available. *Id.* But between September 2021 and January 2022,

Starbucks completed repairs and renovations to numerous Buffalo stores in just weeks or a few months, most of which were unplanned prior to the union campaign. *Id.*

Addressing a complaint alleging unfair labor practices, the Board found that, in the course of responding to employee organizing activity, Starbucks committed hundreds of violations of the National Labor Relations Act, including myriad violations of Section 8(a)(1), 29 U.S.C. § 158(a)(1).[2] Among those Section 8(a)(1) violations, the Board held that Starbucks violated the Act by soliciting grievances and promising benefits to its employees in an effort to deter union activity. On review, the panel affirmed the Board's application of *NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409 (1964), pursuant to which an employer's promises or grants of benefits violate the Act when "motivated by an unlawful purpose to coerce or interfere with protected union activity." 191 F.4th at 339. The panel held that substantial evidence supported the Board's findings that Starbucks's solicitations of grievances and promises of benefits violated Section 8(a)(1). *Id.* at 339-40.

In addition, the panel affirmed the Board's finding that Starbucks's October 2021 modified pay increase, which expanded the category of employees who

[2] An employer's conduct violates Section 8(a)(1) if it has a reasonable tendency to coerce employees in the exercise of their Section 7 rights (29 U.S.C. § 157) to form, join, or assist labor organizations and to engage in other concerted activities. *UNF W. v. NLRB*, 844 F.3d 451, 457-58 (5th Cir. 2016).

would be eligible for wage increases, violated Section 8(a)(1) as an unlawfully motivated promise or grant of benefits. *Id.* at 342-43. The panel explained that the increase was unlawful because it "sprung from" the listening sessions prompted by union activity, and marked an augmentation of the planned wage increase announced only three months earlier. *Id.*

3. Starbucks also engaged in acts of retaliation against employees across its Buffalo-area stores. For example, it more strictly enforced rules through "level setting" (Starbucks's term for ensuring that stores were functioning in accordance with its rules and policies), terminated employees, changed work schedules, and closed a mall kiosk store. 191 F.4th at 335-37. (RE.5-7,105-20.) The Board found that, by retaliating against employees for their union activity, Starbucks violated Section 8(a)(3) and (4) of the Act, 29 U.S.C. § 158(a)(3) and (4).[3]

In finding these violations, the Board applied the well-established test of motivation set forth in *Wright Line*, 251 NLRB 1083 (1980), *enforced on other grounds*, 662 F.2d 899 (1st Cir. 1981). *See also NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401-04 (1983) (affirming Board's *Wright Line* framework). Specifically,

[3] Section 8(a)(3) prohibits employer discrimination to "discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). Section 8(a)(4) bars an employer from discharging or otherwise discriminating against an employee "because he has filed charges or given testimony under [the Act]." 29 U.S.C. § 158(a)(4). A violation of Section 8(a)(3) or (4) derivatively violates Section 8(a)(1). *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 698 n.4 (1984).

the Board found that the affected employees engaged in protected activities, Starbucks knew of those activities, and they were a motivating factor in Starbucks's decision to take adverse actions against the employees. (RE.4-7.)

On review, the panel held that substantial evidence supported the Board's findings that Starbucks committed numerous violations of Section 8(a)(3) and (4), and that Starbucks's purported nondiscriminatory reasons for taking its actions were pretextual. 191 F.4th at 347, 349-50. The panel upheld each Section 8(a)(3) and (4) violation found by the Board.[4] *Id.* at 346.

## ARGUMENT

### I. THE PANEL'S FACT-BASED DETERMINATION TO UPHOLD THE BOARD'S FINDING THAT STARBUCKS ACTED WITH UNLAWFUL MOTIVE IN SOLICITING GRIEVANCES AND GRANTING BENEFITS DOES NOT PRESENT A QUESTION OF EXCEPTIONAL IMPORTANCE

The panel correctly held that Starbucks's uncharacteristic rush to fix deficiencies, raise wages, solicit and address employee concerns, alleviate understaffing, and implement training, all after union activity began in Buffalo, was for the unlawful purpose of coercing or interfering with protected union activity in violation of Section 8(a)(1). 191 F.4th at 340-41.

---

[4] Starbucks does not seek rehearing of the panel's enforcement of the Board's findings that it violated Section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5). 191 F.4th at 351-52.

The panel's determinations are supported by decades of settled precedent holding that an employer *can* take ameliorative steps, raise wages, hire new employees to alleviate understaffing, grant promotions, and implement training during an organizing campaign, so long as those actions are not unlawfully motivated. 191 F.4th at 339; *Exch. Parts Co.*, 375 U.S. at 409; *Delchamps, Inc. v. NLRB*, 588 F.2d 476, 479 (5th Cir. 1979). To determine motive, courts look at factors such as whether the employer has manifested anti-union animus, the timing of the promise or conferral of benefits, the employer's knowledge of union activity, and the relation of the conferral of benefits to past practices. *Delchamps*, 588 F.2d at 479.

Contrary to Starbucks's claim, the panel and the Board did not conflate motive with but-for causation by purportedly relying on timing alone to establish Starbucks's anti-union motivation. (Pet.12.) Indeed, neither the panel nor the Board placed exclusive reliance on timing as Starbucks asserts. As the panel explained, ample evidence beyond timing "suffice[d] to support the conclusion that Starbucks's actions were *driven by* union activity." 191 F.4th at 341 (emphasis added). The panel explained that Starbucks "skirt[ed] addressing" that broader evidence, which included evidence of its anti-union animus, its undisputed knowledge of union activity, and its departure from past practice. 191 F.4th at 335-37. (RE.3-4,94-98.) As a result, Starbucks's motive argument failed not because

of an error by the panel, but because of Starbucks's failure to engage with the relevant evidence.[5]

There is likewise no merit to Starbucks's argument that, under the panel's decision, an employer cannot remedy workplace deficiencies that come to light while union activity is underway. (Pet.13-14.) Starbucks and *amici* ignore the clear counsel in the panel's opinion that there would be no threat to an employer's ability to remedy workplace concerns, so long as the employer can demonstrate that its remedial actions "accord[] with its past practices nationwide, or that countervailing evidence cuts against the reasonable inference that its conduct" was motivated by anti-union sentiment. 191 F.4th at 341. Starbucks failed to satisfy either of those requirements before the panel. It failed to demonstrate that its conduct in Buffalo comported with any existing past practice nationwide. And it failed to present evidence that cut against the reasonable inference that its conduct was motivated by anti-union sentiment.

As Starbucks recognizes, union activity should not "preclude employers from making needed repairs or taking steps to ensure customer-friendly, safe, and operational stores, *if they would do so in the ordinary course*." (Pet.13-14 (emphasis added).) The panel did not hold otherwise. Instead, it concluded, on the

---

[5] Without sufficient argumentation, Starbucks seemingly attempts in passing to renew its argument that its actions were not "benefits." (Pet.13.) That argument, too, was addressed and rejected by the panel. 191 F.4th at 340-41.

record presented, that substantial evidence supported the Board's finding that Starbucks's actions were *not* in its ordinary course of business. 191 F.4th at 340-41. (RE.94-99.) Indeed, as the panel aptly explained, "the fact that Starbucks[] . . . seem[ed] to admit that the act of remedying safety violations was out of step with past practices only reinforces the image of Starbucks's historical neglect of the Buffalo locations until the advent of organizing activity." *Id.*; *cf. Wal-Mart Stores, Inc.*, 348 NLRB 274, 282 (2006) (employer met burden to show improvement was in its ordinary course of business); *AdvancePierre Foods, Inc.*, 366 NLRB No. 133, slip op. at 34 (2018) (same), *enforced*, 966 F.3d 813 (D.C. Cir. 2020).

Finally, Starbucks argues that "[n]o evidence proved" that its wage increase was motivated by anti-union sentiment. (Pet.14.) The panel identified this argument as a mere disagreement with the Board's "interpretation of the facts, to which [the panel] must defer." 191 F.4th at 342. The panel held that the "sufficiently illustrative record" supported the reasonable inference that the wage increase was motivated by Starbucks's desire to interfere with union activity. *Id.*

## II. THE PANEL CORRECTLY UPHELD THE BOARD'S FINDINGS OF ANIMUS ON THE BASES RELIED UPON BY THE BOARD, RAISING NO CONFLICT WITH THE SUPREME COURT'S DECISION IN *SEC v. CHENERY*

The panel properly held that substantial evidence supported the Board's findings that Starbucks retaliated against employees for their union or other protected activity in numerous ways, and on numerous occasions, in violation of

Section 8(a)(3) and (4) of the Act. Nevertheless, citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), Starbucks incorrectly argues that none of the Section 8(a)(3) and (4) violations can stand, because, it claims, the panel upheld the Board's animus findings on grounds not invoked by the Board. (Pet.9.) Specifically, Starbucks posits that the panel's reversal of 3 findings—out of the plethora of findings that Starbucks violated Section 8(a)(1) in 32 different ways—creates a *Chenery* problem necessitating a remand, because the Board relied on Starbucks's Section 8(a)(1) violations, among other factors, in finding animus under *Wright Line*. (*See* RE.11.) Starbucks is mistaken.

In *Chenery*, the Supreme Court held that a court cannot uphold an agency decision on a rationale that the agency did not rely upon when making the decision. 318 U.S. at 95. Therefore, a court cannot uphold an agency's decision based on *post hoc* agency rationalizations, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962), or a rationale supplied after the fact by an external actor, *see Calcutt v. Fed. Deposit Ins. Corp.*, 598 U.S. 623 (2023). Neither form of impropriety is implicated here. The panel did not uphold the Board's findings of Section 8(a)(3) and (4) violations on any basis other than that relied upon by the Board.

The panel explicitly determined that substantial evidence supported the Board's inference that Starbucks acted with an anti-union motive when taking

adverse actions against union-supporting employees. 191 F.4th at 348-49. The panel did not need to marshal every instance of Section 8(a)(1) interference, restraint, or coercion by Starbucks to find support for the Board's inference. Rather, the panel reasonably quoted *and affirmed* the Board's conclusion that the "'vast and systemic barrage of Section 8(a)(1) violations' warrant[ed] an inference that an overwhelming number of the adverse employment actions alleged to be unlawful in the [unfair-labor-practice] complaint resulted from '[Starbucks's] extreme animus toward the organizing campaign in the Buffalo area.'" 191 F.4th at 348-49.

Given the panel's affirmance of the Board's stated rationale, there is no similarity between this case and *Calcutt*, cited by Starbucks. (Pet.10.) In *Calcutt*, the Sixth Circuit determined that the FDIC had erred by applying incorrect legal standards, but instead of remanding the case, the court conducted its own review of the record, applied the correct legal standard, and concluded that substantial evidence supported the agency's decision. The Supreme Court held that the Sixth Circuit's approach ran afoul of *Chenery* because the Sixth Circuit upheld the FDIC's decision on a rationale different from the one stated by the agency. 598 U.S. at 624. The panel made no such error here.

Both the Board and the panel assessed the Section 8(a)(3) and (4) violations under the *Wright Line* framework. 191 F.4th at 347. (RE.4.) As this Court

recognizes, under *Wright Line*, animus can be established through factors such as the timing of the employer's action after the onset of union activity and the employer's deviation from past practice, in addition to the existence of additional unfair labor practices. *Valmont Indus., Inc. v. NLRB*, 244 F.3d 454, 465 (5th Cir. 2001). The panel agreed with the Board that "an extensive record of conduct" in this case disclosed evidence of animus well beyond Starbucks's Section 8(a)(1) violations. *Id.* (RE.5-6.)

For example, the panel, like the Board, cited the unprecedented degree of "level setting" in Buffalo stores after union activity began—despite a history of remarkably lax enforcement of policies—as evidence supporting the inference of anti-union animus. 191 F.4th at 347-48. *See Syracuse Peace Council v. FCC*, 867 F.2d 654, 657 (D.C. Cir. 1989) ("[I]f an agency relies on two grounds for a decision, a court may sustain it if one is valid and if the agency would clearly have acted on that ground even if the other were unavailable."); *Commc'n Workers of Am., Loc. 5008 v. NLRB*, 784 F.2d 847, 851 (7th Cir. 1986). (RE.5-6.) Because the panel upheld the Board's Section 8(a)(3) and (4) findings on bases relied upon by the Board, the requirements of *Chenery* have been met.[6]

[6] Given the absence of any *Chenery* problem, the panel's reference to a remand for the Board to specify the exact violations it relied on from its Section 8(a)(1) analysis is unnecessary. 191 F.4th at 347. Importantly, the panel enforced the relevant portions of the Board's Order. *Id.* at 356. If the panel's language

## III. THE PANEL UPHELD THE BOARD'S FINDING OF ANTI-UNION MOTIVE BASED ON SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH PRECEDENT

The panel correctly held that substantial evidence supports the Board's finding that anti-union animus was a motivating factor in Starbucks's decision to discipline six employees and close a mall kiosk location in violation of Section 8(a)(3) and (4). 191 F.4th at 347-51. Starbucks wrongly claims (Pet.16) that the panel erred by endorsing the Board's finding of animus because, in Starbucks's view, the Board did not individually assess whether each decisionmaker had knowledge of the employees' union activity, and whether each decisionmaker harbored anti-union animus.

The panel examined the Board's 134-page decision and the record evidence and explicitly rejected Starbucks's premise that the Board only found "general hostility." 191 F.4th at 348. It explained that "the vast record conveys a reasonable inference that several of the[] managers and executives who took direct adverse action against" Starbucks's employees "were, or should have been, aware of their union affiliation." *Id.* Moreover, the panel noted that "the Board's conclusion was sufficiently detailed to demonstrate it examined the individual instances contrary to some form of generalized hostility." *Id.* The panel was not

---

regarding remand is viewed as problematic, the Board would not oppose the panel clarifying its decision to reflect that remand is not needed.

obliged to regurgitate the Board's fulsome analysis of the specific animus as to each employee in order to conclude that substantial evidence supports the Board's findings. *Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972) (stating that courts of appeals have wide latitude in deciding how to write an opinion); *United States v. Garza*, 165 F.3d 312, 314 (5th Cir. 1999) ("A litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised.").[7]

Additionally, the panel determined that the Board appropriately used circumstantial evidence to infer employer knowledge of union activity and improper motive. 191 F.4th at 348-49. *See Marathon LeTourneau Co. v. NLRB*, 699 F.2d 248, 253 (5th Cir. 1983). (RE.4&n.12.) It is well established that the Board may infer a discriminatory motive where the employer's adverse action is suspiciously timed in relation to protected activity; the employer has shown hostility towards that activity, for example through contemporaneous unfair labor practices; the employer offers shifting, false, or exaggerated reasons for its action;

[7] As the panel acknowledged, the Board set forth thorough analyses of each of the affected employees and decisionmakers throughout its exhaustive decision. 191 F.4th at 348-50. For example, the Board detailed each fact of Brian Nuzzo's termination showing that the decisionmaker, district manager Kristina Mkrtumyan, knew of his union activity, that the reason given for his termination was pretextual, and that Mkrtumyan harbored antiunion animus, demonstrated by her ongoing efforts to dissuade union activity. (RE.64n.263,74,79,118-19.)

or the employer's action is out of step with past practices. *Valmont Indus.*, 244 F.3d at 465. (RE.5n.13 (citing cases).)

Here, as the panel noted, Starbucks's adverse actions were suspiciously timed in relation to the employees' protected activities, such as closing the mall kiosk and instituting level setting almost immediately after union activity began when executives arrived in Buffalo. 191 F.4th at 349. (RE.106-07.) In addition, Starbucks had shown hostility towards the employees' union activities through, among other things, its "vast and systemic barrage" of Section 8(a)(1) violations found by the Board and affirmed by the panel. *Id.* at 348-49. Starbucks also evinced animus by offering false or exaggerated reasons for its actions, such as by citing employee misconduct that, as the panel noted, "was not in fact as egregious as Starbucks dramatizes." *Id.* at 349-50. And its actions were more than suspiciously out of step with past practice, e.g., instructing managers to prohibit employees from wearing pro-union pins; dispatching executives and non-local managers into stores, instituting unprecedented level setting in Buffalo, and terminating some employees for reasons it had never terminated employees before. *Id.* at 336, 347, 349-50. With this pile of evidence in the record, the panel correctly held that substantial evidence supported the Board's finding that Starbucks was motivated by anti-union animus. *Id.* at 351.

Neither *Poly-America, Inc. v. NLRB*, 260 F.3d 465 (5th Cir. 2001), nor *Pioneer Natural Gas Co. v. NLRB*, 662 F.2d 408 (5th Cir. 1981), relied on by Starbucks (Pet.16), undermine the panel's decision. In both cases, the Court recognized that the Board can rely on circumstantial evidence to infer that the knowledge of one supervisor has been communicated to another, as long as the Board does not "mechanically impute" the knowledge of a lower-level supervisor to a decision-making supervisor. *Poly-Am.*, 260 F.3d at 490; *Pioneer*, 662 F.2d at 412. Here, there is no dispute that high-ranking Starbucks officials knew about the employees' union activity, and the Board drew the reasonable inference that lower-level managers would also be aware of the employees' union activities and sympathies. The panel properly held that the "vast record conveys a reasonable inference" that the decisionmakers knew or should have known about the employees' union activities. 191 F.4th at 348.

Likewise, because the panel held that the Board reasonably inferred a causal connection between Starbucks's anti-union motivation and the adverse employment actions, 191 F.4th at 348-49 (RE.4-5,5n.13,105-20), the Court's concerns in *NLRB v. Mueller Brass Co.*, 509 F.2d 704, 711 (5th Cir. 1975), and *Tesla, Inc. v. NLRB*, 120 F.4th 433, 440 (5th Cir. 2024) (en banc), are inapplicable here. *Tesla* is additionally distinguishable because, in that case, the Court found

that the Board failed to consider record evidence that the decisionmaker did not harbor union animus. 120 F.4th at 440.

Finally, Starbucks claims that it could have rebutted anti-union animus if the administrative law judge had not placed an “artificial restriction” on the review of evidence. (Pet.17.) The panel properly rejected that argument because the judge evaluated all the evidence and determined which evidence was appropriately given weight. 191 F.4th at 350. (RE.31-32&n.32,92n.439.) Starbucks tries to turn its disagreement over the weight given to particular evidence into a “question of exceptional importance.” But as the panel recognized, “the court should not reevaluate th[e] evidence and substitute its judgment for that of the Board, especially when the dispute here reduces to conflicting interpretations of fact.” 191 F.4th at 350. *See also NLRB v. Allied Aviation Fueling of Dallas LP*, 490 F.3d 374 (5th Cir. 2007) (“In determining whether the Board’s factual findings are supported by the record, we do not . . . reweigh the evidence.”).

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court deny Starbucks's petition for rehearing *en banc*.


/s/ Amy H. Ginn
AMY H. GINN
*Supervisory Attorney*

/s/ Madeline A. Terlap
MADELINE A. TERLAP
*Attorney*

National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2942
(202) 273-3827

CRYSTAL S. CAREY
*General Counsel*

LYNISA B. MICHALSKI
*Acting Deputy General Counsel*

PETER SUNG OHR
*Associate General Counsel*

MEREDITH JASON
*Deputy Associate General Counsel*


November 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| STARBUCKS CORPORATION | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | No. 24-60650 |
| | ) | |
| v. | ) | Board Case Nos. |
| | ) | 03-CA-285671 *et al.* |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ Madeline A. Terlap
Madeline A. Terlap
Attorney
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 12th day of November 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| STARBUCKS CORPORATION | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | No. 24-60650 |
| | ) | |
| v. | ) | Board Case Nos. |
| | ) | 03-CA-285671 *et al.* |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board certifies that its document contains 3,741 words of proportionally-spaced, 14-point type, and the word processing system used was Microsoft Word 365.

/s/ Madeline A. Terlap
Madeline A. Terlap
Attorney
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 12th day of November 2026