# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 24-60650

STARBUCKS CORPORATION,

*Petitioner/Cross-Respondent,*

– v. –

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
IN NO. 03-CA-285671

## RESPONSE TO PETITION FOR REHEARING EN BANC

Ian Hayes
Michael Dolce
HAYES DOLCE LLP
135 Delaware Ave, Suite 502
Buffalo, New York 14202
Tel: (716) 608-3427
Tel: (716) 912-3480
ihayes@hayesdolce.com
mdolce@hayesdolce.com

*Attorneys for Intervenor,*
*Workers United*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (397752)

## INTERVENOR'S CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner/Cross-Respondent:**

- Starbucks Corporation

**Respondent/Cross-Petitioner:**

- National Labor Relations Board

**Intervenor:**

- Workers United, affiliated with the Service Employees International Union

**Counsel for Petitioner/Cross-Respondent:**

- Lisa S. Blatt
  Amy Mason Saharia
  Danielle J. Sochaczevski
  Kees D. Thompson
  Claire R. Cahill
  Williams & Connolly LLP
  680 Maine Avenue, S.W.
  Washington, DC 20024
  (202) 434-5000
  lblatt@wc.com
  asaharia@wc.com
  dsochaczevski@wc.com
  keesthompson@wc.com
  ccahill@wc.com

- Jeffrey S. Hiller
  Littler Mendelson, P.C.
  41 S. High St., Ste. 3250
  Columbus, OH 43215
  (614) 463-4230
  jhiller@littler.com

- Jonathan O. Levine
  Littler Mendelson, P.C.
  1111 E. Kilbourn Ave., Ste. 1000
  Milwaukee, WI 53202
  (414) 291-5537
  jlevine@littler.com

**Counsel for Respondent/Cross-Petitioner:**

- Ruth E. Burdick
  Eric Weitz
  Amy Helen Ginn
  M. Kathleen McKinney
  National Labor Relations Board
  1015 Half Street, SE
  Washington, DC 20570
  (202) 273-2960
  appellatecourt@nlrb.gov
  amy.ginn@nlrb.gov
  eric.weitz@nlrb.gov

**Counsel for Intervenor:**

- Ian Hayes
  Michael Dolce
  Hayes Dolce LLP
  135 Delaware Ave., Ste. 502
  Buffalo, NY 14202
  (716) 534-8388
  ihayes@hayesdolce.com
  mdolce@hayesdolce.com

- Manuel Alfonso Quinto-Pozos
  Deats Durst & Owen, P.L.L.C.
  8140 N. Mopac Expy., Ste. 250
  Austin, TX 78759
  (512) 474-7896
  mqp@ddollaw.com

/s/ Ian Hayes
*Attorney of Record for Workers United*

## TABLE OF CONTENTS

COUNTERSTATEMENT OF THE ISSUES....................................................1

INTRODUCTION ....................................................................................1

COUNTERSTATEMENT OF THE CASE..................................................2

ARGUMENT ..........................................................................................4

I. The Panel's Analysis and Conclusions Regarding Conferral of Benefits and Solicitation of Grievances Under 8(a)(1) was Proper. .........5

II. The Panel's Enforcement of the Board's Section 8(a)(3) and 8(a)(4) Conclusions was Proper. .........................................................8

A. The Panel's Approach to Inferring Knowledge and Anti-Union Animus was Proper. ........................................................8

B. The Panel's decision does not conflict with *SEC v. Chenery Corp.* .....12

III. Each of Starbucks's arguments has been heard several times over. ............15

CONCLUSION .......................................................................................16

CERTIFICATE OF SERVICE ..................................................................17

CERTFICATE OF COMPLIANCE ............................................................18

# TABLE OF AUTHORITIES

## Cases

*Calcutt v. FDIC*,
598 U.S. 623 (2023) ........................................................................ 14

*Delchamps, Inc. v. NLRB*,
585 F.2d 91 (5th Cir. 1978) ........................................................................ 9

*Delchamps, Inc. v. NLRB*,
588 F.2d 476 (1979) ........................................................................ 5, 6, 7, 8

*Dish Network Corp. v. NLRB*,
953 F.3d 370 (5th Cir. 2020) ........................................................................ 14

*Johnson v. Lumpkin*,
76 F.4th 1037 (5th Cir. 2023) (quoting 5th Cir. R. 35) ........................................ 4

*Network Dynamics Cabling, Inc. & Int'l Bhd. of Elec. Workers, Loc. 98, Afl-Cio*,
351 NLRB 1423 (2007) ........................................................................ 6

*NLRB v. Arkema, Inc.*,
710 F.3d 308 (5th Cir. 2013) ........................................................................ 13

*NLRB v. Exchange Parts Co.*,
375 U.S. 405 (1964) ........................................................................ 5

*NLRB v. Mueller Brass Co.*,
509 F.2d 704 (5th Cir. 1975) ........................................................................ 10

*Pioneer Nat. Gas Co. v. NLRB*,
662 F.2d 408 (5th Cir. 1981) ........................................................................ 9

*Poly-Am., Inc. v. NLRB*,
260 F.3d 465 (5th Cir. 2001) ........................................................................ 9

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ........................................................................ 12, 16

*Stern Produce Co., Inc. v. NLRB*,
97 F.4th 1 (D.C. Cir. 2024) ........................................................................ 11

*Wright Line*,
251 NLRB 1083 (1980) ........................................................................ 13

## COUNTERSTATEMENT OF THE ISSUES

1. Whether the Court properly enforced the National Labor Relations Board's ("NLRB" or "Board") conclusions regarding dozens of violations of the NLRA while remanding regarding narrow questions on a small fraction of the Board's findings.

2. Whether the Court properly relied on controlling precedent that an employer violates the NLRA by granting improvements as part of an anti-union campaign.

3. Whether the Court properly enforced Board conclusions that Starbucks displayed discernable anti-union animus and violated Sections 8(a)(3) and (4) of the NLRA.

## INTRODUCTION

Starbucks's petition for rehearing en banc ("Petition") is simply its latest effort to resist the most well-established principles of federal labor law. It has displayed a chronic habit of abusing judicial infrastructure to carry out that resistance for years now, with no regard for what it must say or do along the way. Starbucks identifies no error in the Court's panel decision, points to no precedent with which the decision conflicts, and raises no important issue that would be new to this Court, the Supreme Court, or the NLRB. The Petition therefore fails to meet the standard for the extraordinary step of a rehearing en banc, and it should be denied in full.

## COUNTERSTATEMENT OF THE CASE

Underlying this case is Starbucks's unprecedented and widespread attack on its employees' rights under the law, which began almost immediately after employees announced that they were organizing with Workers United. RE.5, 34; ROA.54-55.[1] This public announcement was followed by Starbucks representatives engaging in surveillance of employees' union activity, physically occupying Starbucks stores they had not before, and holding mass meetings with workers about the unionization effort. RE.35, 40n.81, 95; ROA.1155, 1216, 1848-50, 1926. Starbucks began soliciting grievances from employees during these meetings, RE.38-39; ROA.4215-4305, 4314-4405, 4476-4573, and immediately began acting on complaints by hiring large swaths of employees and making drastic and abrupt improvements to facilities, among other changes. RE.37, 41, 98; ROA.99, 286-87, 556-66, 703-06, 720, 725, 742, 878-88, 1104, 1179, 1417-18, 1540-41, 1557, 1637-38, 1867-68, 1892-93, 3011-36. Managers in the meetings unambiguously directed employees to vote against unionization, and made threats of worsened conditions if workers voted for the union. RE.39-40, 101-02; ROA.561, 713, 1096, 1224, 1228, 2110, 2431, 4215-4305.

Starbucks soon began shifting from promising and granting improvements to disciplining employees under policies that previously allowed managers discretion

[1] "RE" refers to record excerpts on appeal and "ROA" refers to the record on appeal.

– what the company now terms "level-setting." RE.5; ROA.476, 503, 741, 868, 871-73, 994, 1244, 1702-04. Starbucks did this only in Buffalo stores, and not within other parts of Area 156 (where there was no union campaign). RE.34-35, 106; ROA.2826-34, 2858-59. Starbucks terminated seven employees, disciplined many others, then turned to even more desperate actions, such as closing stores entirely.

In response, Workers United filed numerous unfair labor practice charges with the NLRB, resulting in an in-depth investigation. The Board's General Counsel eventually issued multiple consolidated complaints against Starbucks. Following an exhaustive administrative law judge (ALJ) hearing, the ALJ made a sprawling decision and recommended order, finding Starbucks had violated the Act dozens of times over. RE.122-24. On appeal of the ALJ's decision, the Board agreed with most, but not all of the ALJ's conclusions, treating each allegation individually, and holding that Starbucks violated sections 8(a)(1), (3), (4), and (5) of the Act numerous times. RE.1-10.

Starbucks appealed the Board's decision to this Court. The panel enforced the Board's § 8(a)(3), (4), and (5) conclusions and granted enforcement of the bargaining order and the public notice-reading order, and denied enforcement of the § 8(a)(1) decision with respect to one finding of unlawful surveillance, and the sole findings of unlawful interrogation and coercive threats; denied enforcement of the consequential damages remedy; and denied enforcement of restoring the status quo

ante of the Galleria kiosk. The panel also remanded a portion of the case to the Board to specify which 8(a)(1) conclusions supported its conclusions of 8(a)(3) and (4) violations. Starbucks filed then filed this petition.

**ARGUMENT**

The Court's rules strongly disfavor rehearing en banc, and Starbucks's request fails to meet the standard for rehearing. "Petitions for rehearing en banc are an 'extraordinary procedure' that should be used only to bring the court's attention to an issue of 'exceptional public importance' or one that 'directly conflicts' with on-point Supreme Court or prior Fifth Circuit precedent." *Johnson v. Lumpkin*, 76 F.4th 1037, 1039 (5th Cir. 2023) (quoting 5th Cir. R. 35)[2]. Parties' failure to meet this standard makes it "the most abused prerogative of appellate advocates in [this] Circuit." 5th Cir. I.O.P (Petition for Rehearing En Banc). That description applies here.

The panel decision suffers from neither conflicts with precedent nor issues an issue of exceptional importance. The panel applied well-settled precedent regarding violations of the NLRA in an unremarkable way. The issue Starbucks points to as of exceptional importance was addressed by the panel decision and Starbucks's position conflicts with decades of precedent about how employers may lawfully

[2] In 2024, Rule 35 (hearing and rehearing en banc) was transferred to Rule 40 (panel rehearing); however, the standard for en banc petitions was not substantially altered.

respond to union organizing. Reinforcing this is the fact that Starbucks has raised the same issues before this Court and before the Board, and both have already ruled on them. If Starbucks's request were granted, it would simply result in a relitigation of well-settled law and the panel's already-decided points, none of which raise issues of exceptional importance.

## I. The Panel's Analysis and Conclusions Regarding Conferral of Benefits and Solicitation of Grievances Under 8(a)(1) was Proper.

Starbucks claims that the standard the panel applied to the Board's Section 8(a)(1) violations regarding conferral of benefits and solicitation of grievances was improper because the panel "did not analyze Starbucks' motive for taking each action," and instead, "inferred bad motive from timing." Petition ("Pet.") at 11. Further, it claims this raises an issue of exceptional importance regarding what an employer may do regarding workplace problems while union organizing is happening. Pet. 10. The truth is that the panel's approach is far from unusual or novel. Its approach is squarely in line with Supreme Court and Fifth Circuit precedent, which has long recognized "[t]he danger inherent in well-timed increases in benefits is the suggestion of a fist inside the velvet glove." *NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409 (1964); *Delchamps, Inc. v. NLRB*, 588 F.2d 476, 479 (1979). Further, as the Panel discussed and analyzed, the applicable standard does not place Starbucks in an "impossible bind [ ] that construing operations changes as 'benefits' would prohibit [Starbucks] from taking any actions to improve working

conditions during a union campaign." Op.12. Contrary to the exaggerated claims of Starbucks and amici curiae, the panel's decision does not raise an issue of extraordinary importance justifying en banc review, nor does it violate precedent.

In setting out the standard, the panel correctly recognized that Section 8(a)(1) promise or conferral of benefits claims hinge on "whether the promise or grant of benefits was motivated by an unlawful purpose to coerce or interfere with protected activity." Op.11 (citing *Network Dynamics Cabling, Inc. & Int'l Bhd. of Elec. Workers, Loc. 98, Afl-Cio,* 351 NLRB 1423, 1424 (2007)). As this Court has previously detailed in *Delchamps*, whether this "velvet-glove violation exists" is determined by analyzing "a number of factors, such as whether the employer has manifested an anti-union animus, the timing of the [benefit], the employer's knowledge of union activity, and the relation of the [benefit] to past practices." *Delchamps, Inc. v. NLRB*, 588 F.2d 476, 479 (1979).

The panel plainly examined these factors in relation to violations here, and nonetheless concluded substantial evidence supported the Board's determination. As it noted, that Starbucks has pointed to "generalized evidence in the record" that the various measures it took were "ordinary and commonplace nationwide [ ] wholly fails to address *why* Starbucks focused and amplified these measures in the Buffalo region *only after* union organizing activity began." Op.11-12 (emphasis in original).

The Act, as enforced by the panel, does not "hamstring employers' operational decisions during union campaigns," as Starbucks and the amici curiae argue. Pet. v; *see* Amici Curiae Br. at 11 ("The panel decision leaves employers without a safe harbor for resolving situations where corrective action indisputably is required by law, contract, or an established preexisting standard."). An employer seeking to workplace concerns during a union campaign need only show sufficient evidence that improvements or repairs lack anti-union animus. *See e.g. Delchamps, Inc.* 588 F.2d at 481 ("The Board's collection of suspicious activities may be sufficient to require [the employer] to come forward [ ] with a legitimate business justification for the challenged wage increase.").

However, as emphasized by the panel, Starbucks has provided no explanation for its differential treatment of stores in the Buffalo area after the onset of union activity, and has pointed to no evidence justifying its departure from past practices regarding the speed at which it made improvements. *See* Op.13-14 ("[T]here would be no such perceived threat [in violation of 8(a)(1)] if Starbucks had addressed portions of the record–which it has not–demonstrating that its conduct in Buffalo accords with its past practices nationwide, or that any countervailing evidence cuts against the reasonable inference that its conduct in Buffalo was motivated by anti-union sentiment"). Therefore, the "catch-22" Starbucks describes does not exist.

Finally, Starbucks argues that the Board and the panel improperly "inferred bad motive from timing," and in doing so, "conflate[d] motive and but-for causation." The panel already rejected the identical argument: "Starbucks introduces a novel analytical distinction which [the Court] need not consider." Op.13. In support of this argument, neither Starbucks nor amici curiae cite to any authority recognizing such a distinction. As discussed above, the *Exchange Parts* standard acknowledges the coercive effect inherent in an employer's conferral of benefits in response to union activity, and allows the Board to infer improper motive from a number of factors, including timing or deviations from past practice. *Delchamps, Inc.*, 588 F.2d at 479.

## II. The Panel's Enforcement of the Board's Section 8(a)(3) and 8(a)(4) Conclusions was Proper.

### A. The Panel's Approach to Inferring Knowledge and Anti-Union Animus was Proper.

Starbucks's argument that the panel erred by affirming the Board's inference that the barrage of Section 8(a)(1) violations were sufficient to establish anti-union animus for the purposes of showing Starbucks violated Section 8(a)(3) and (4) is equally unavailing. Specifically, Starbucks takes issue with the panel's enforcement as it relates to the Board's inferences regarding employer knowledge of protected activity, the causation element of anti-union animus, and the Board's "artificial restriction" placed upon Starbucks which, it argues, limited its ability to rebut the

inference of animus. Pet.17. Starbucks's argument on this point does not identify a failure to follow precedent or an issue of exceptional importance.

Starbucks points to this Court's holdings in *Poly-Am., Inc. v. NLRB*, 260 F.3d 465 (5th Cir. 2001) and *Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408 (5th Cir. 1981), for the proposition that the Board must prove that the particular supervisor who took adverse action against an employee knew of that employee's union activity. *See* Pet. 16. However, this is a vast oversimplification of the standard. With *Poly-Am, Inc.* and *Pioneer Nat. Gas Co.*, this Court reinforced that "it is permissible to rely on circumstantial evidence to infer that the knowledge of one supervisor has been communicated to the other, [however] the Board is not permitted to 'mechanically impute' the knowledge of a lower-level supervisor to the decision-making supervisor." *Poly-Am*, Inc. v. NLRB, 260 F.3d 465, 490 (5th Cir. 2001) (quoting *Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408, 412 (5th Cir. 1981) and *Delchamps, Inc. v. NLRB*, 585 F.2d 91, 95 (5th Cir. 1978)). As the panel held here here, however, the Board did not engage in the kind of "mechanical imputation" this Court has warned against; the Board satisfactorily established knowledge through consideration of the "vast record [which] conveys a reasonable inference that several of these managers and executives who took direct adverse action against were, or should have been, aware of [the affected employee's] union affiliation." Op.27.

Starbucks also takes issue with Board's method of inferring causation overall, noting that "the Board must establish 'a reasonable inference of causal connection between the employer's antiunion motivation and the employee's discharge,'" Pet. 16 (citing *NLRB v. Mueller Brass Co.*, 509 F.2d 704, 711 (5th Cir. 1975)). It argues that in finding causation here, "[n]either the Board nor the panel identified more than 'general hostility.'" Pet.17.

Although the standard cited by Starbucks is correct, its characterization of the findings by the Board and the panel are not. The panel directly addressed this argument in its decision:

> [Starbucks's] premise—that the Board only found "general hostility" here lacking "any concrete finding" of motive—is unavailing when [ ] the vast record conveys a reasonable inference that several of these managers and executives who took direct adverse action against were, or should have been, aware of their union affiliation [ ] [and] the Board's conclusion was sufficiently detailed to demonstrate it examined the individual instances contrary to some form of generalized hostility.

Op.27. And indeed, the Board exhaustively analyzed the record regarding each of the Section 8(a)(3) and 8(a)(4) allegations to determine whether circumstantial evidence gave rise to an inference of discriminatory motive. *See e.g.* RE5 (noting that Starbucks's stricter enforcement of work rules and timing of the change "triggered a presumption that it acted from unlawful motivation.").

Further, the Board concluded "that [Starbucks's] vast and systemic barrage of Section 8(a)(1) violations warrant[s] an inference that an overwhelming number of

the adverse employment actions alleged to be unlawful in the complaint resulted from [Starbucks's] extreme animus toward the organizing campaign in the Buffalo area." RE5. Such an inference is simply not equivalent to the "simple animus and general hostility toward the union," deemed insufficient to establish an unlawful motive. *Stern Produce Co., Inc. v. NLRB*, 97 F.4th 1, 12 (D.C. Cir. 2024) (cleaned up). Starbucks's arguments on this point ignore the full scope of the record, which the Board and the panel both recognized as "unprecedented."

As the Board explained:

> In finding animus here, we further note that many of the alleged Section 8(a)(3) and (4) violations at issue in this case arise from what the Respondent termed a "level setting" campaign in the Buffalo area. As explained in more detail below, this "level setting," carried out in response to the employees' union organizing activity in the Buffalo area, undergirds many of the Respondent's actions alleged and found to be unlawful in this proceeding and further demonstrates the Respondent's discriminatory motive.

RE5. The panel found that "the Board's reliance on various portions of the record illustrating an 'unprecedented' degree of level-setting in Buffalo—which included a mass mobilization of corporate executives—despite a history of lax enforcement [ ] is sufficient to lend the inference that union activity inspired that kind of response." Op.25.

Moreover, insofar as Starbucks claims this inference was broadly used to establish the necessary element of unlawful motive for each Section 8(a)(3) and 8(a)(4) allegation, the Board's decision undermines this point as it reversed the

ALJ's findings on several Section 8(a)(3) allegations because the circumstantial evidence did not support a finding of animus. *See e.g.* RE9 (dismissing Section 8(a)(3) and 8(a)(1) allegations regarding delay or denial of employee transfer requests where other employees not involved in organizing activity were treated similarly which "supports the conclusion that the Respondent's delayed placement [ ] was not motivated by union animus and thus not sufficiently shown to have been discriminatory by the General Counsel.").

### B. The Panel's decision does not conflict with *SEC v. Chenery Corp.*

Starbucks asserts that the panel's enforcement regarding 8(a)(3) and 8(a)(4) violations conflicts with *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), because the panel simultaneously "rejected part of the reasoning on which its [Section 8(a)(3) and 8(a)(4)] conclusions rested" while finding substantial evidence supported those conclusions. Pet.6. However, there is no such conflict.

In *Chenery*, the Supreme Court held that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained," *Chenery*, 318 U.S. 80, 95 (1943), reasoning that "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted by [are] clearly disclosed and adequately sustained." *Id.* at 94. The panel has done exactly this in its decision: it

determined that the Board's conclusions regarding the Section 8(a)(3) and 8(a)(4) violations were supported by substantial evidence. Op.25-27.

Starbucks's argument here relies on a critical but mistaken conflation of two factors: 1) the voluminous evidence in the record supporting the Board's conclusions that Starbucks violated Section 8(a)(3) and (4); and 2) the Board's conclusions that Starbucks violated Section 8(a)(1) dozens of times over, which provides further support for finding violations of Section 8(a)(3) and (4). The Court's Decision recognized the Board was correct in finding **both** provide grounds for its findings of Section 8(a)(3) and (4) violations. Furthermore, it emphasized at length that those grounds are so expansive that there can be no doubt that the Board's conclusions were supported by substantive evidence.

Starbucks avoids this point by implying the Board's conclusions could only be supported by conclusions of Section 8(a)(1) violations. Not so. Precedent says a finding of Section 8(a)(3) or (4) rests on an analysis of protected activity, employer knowledge of it, adverse action, and whether the protected activity was a motivating factor in the adverse action. *See NLRB v. Arkema, Inc.*, 710 F.3d 308, 32-21 (5th Cir. 2013); *Wright Line*, 251 NLRB 1083 (1980); Op.25 et seq. (explaining precedent and applying it to record). This analysis looks to the entire factual record, not only Section 8(a)(1) conclusions elsewhere in a Board case.

For these same reasons, Starbucks's reliance on *Dish Network* is misplaced. This Court reasoned, in part, that it could only look to the agency's reasons for its conclusions on review, not manufacture new ones *post hoc*. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 379-80 (5th Cir. 2020). But the panel decision did not look outside the Board's reasons for concluding Starbucks violated Sections 8(a)(3) and (4) or make up its own; it simply recognized the considerable evidence supporting those conclusions, and sought clarity about one dimension of the Board's reasoning. Op.25.

Furthermore, the panel did exactly what Starbucks asks for in calling the panel's reasoning error. After conflating the elements above, Starbucks concludes the proper course is to remand under *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023); Pet.9. The panel did so, remanding to the Board "to specify the specific violations it relied on from its § 8(a)(1) analysis." Op.25.

Second, Starbucks dramatically misreads *Calcutt* on that case's relevant point. There, the Supreme Court referred to the "ordinary remand rule" - that a reviewing court should remand **upon finding error**. *Calcutt*, 598 U.S. at 629. The panel here found no error regarding the Board's Section 8(a)(3) and (4) analysis, and simply noted that clarification from the Board about a very narrow question was warranted. Op.25. Starbucks fails to identify an error in the first place.

## III. Each of Starbucks's arguments has been heard several times over.

Starbucks raised substantially identical arguments to the ones it raises here when it was before the Board, then on appeal before the Court. The Court addressed each in turn and came to the correct conclusion on each. The arguments still lack merit and do not support rehearing en banc.

For instance, regarding the Section 8(a)(1) violations, in Starbucks's opening brief it argued at length that it was merely following national standards in taking the actions at issue, not responding to union organizing. Opening Br. 19-27. It argued, as it does again in requesting rehearing en banc, that the Board had not sufficiently addressed whether there was a showing Starbucks was motivated to violate workers' rights under the NLRA. Opening Br. 25-27. In its Reply brief, Starbucks raised the same policy argument it again makes in requesting rehearing en banc: that it cannot be prevented from making changes during a union organizing drive. *E.g.*, Reply Br. 1, 7, 9. It also repeated the argument regarding motive. Reply Br. 8.

The same is true of its Section 8(a)(3) and (4) arguments. Starbucks has already forcefully argued to the panel that the Board incorrectly decided that it had knowledge of union activity, Opening Br. 46-48, and that the Board "improperly inferred anti-union animus" from unrelated decisions. Reply Br. 16-23. The Court addressed these arguments head on, rejecting Starbucks's contention that the Board's analysis of animus amounted to an improper "shortcut," and remanding the

issue of which Section 8(a)(1) violations contributed to the Board's conclusion that animus was a motivating factor for the Section 8(a)(3) and (4) violations. Op.25-26.

Starbucks has even already raised its contentions under *Chenery*: in its Reply brief, it criticized the Board's decision and the Board's brief before this Court, but nonetheless argued that the Board Order did not sufficiently address the interplay of its many violations of the NLRA. Reply Br. 29-30. Indeed, it cited *Chenery* using an internal citation in making this point. *Id.* at 30.

These arguments have been briefed, heard, and rejected at every stage of the underlying proceedings, because the Board's inferences are supported by well-settled law. There is no new issue, the Court correctly applied precedent, and in doing so did not raise any issue of extraordinary importance.

## CONCLUSION

For the foregoing reasons, this Court should deny Starbucks's Petition.

Dated: November 12, 2026

Respectfully Submitted,

/s/ Ian Hayes

Ian Hayes
Hayes Dolce LLP
135 Delaware Ave., Ste. 502
Buffalo, NY 14202
ihayes@hayesdolce.com
*Attorneys for Intervenor Workers United*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2026, I served the original of the foregoing Brief of Intervenor, Workers United, via the Court's appellate CM/ECF filing system. I further certify that this document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ Ian Hayes
Ian Hayes

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 40(d)(3)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th Cir. R. 40.2.5 this document contains 3,599 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 12, 2026

/s/ Ian Hayes
Ian Hayes

Attorney for Intervenor-Workers United